683 So.2d 348 (1996)
Hertha BARRILLEAUX
v.
FRANKLIN FOUNDATION HOSPITAL.
No. 96 CA 0343.
Court of Appeal of Louisiana, First Circuit.
November 8, 1996.
*351 Charles R. Minyard, Lafayette, for Plaintiff/Appellee, Hertha Barrilleaux.
Ian A. MacDonald, Lafayette, for Defendant/Appellant, Franklin Foundation Hospital.
Before CARTER, GONZALES, and PARRO, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment in an action for unpaid wages.

BACKGROUND
In January, 1990, plaintiff, Hertha Barrilleaux, was employed by St. Mary Parish Hospital Service District No. 1, d/b/a Franklin Foundation Hospital (Franklin), as a certified registered nurse anesthetist (CRNA). Plaintiff's duties as a CRNA required that she provide anesthesia services at the hospital, as well as certain secondary duties necessary to providing those services. Plaintiff earned an annual salary of $69,590.64 and was given four (4) weeks of paid time off (PTO) each year. Franklin's personnel policy manual provided that an employee could not carry over more than 224 hours of unused PTO from one anniversary date to the next.
The hospital's arrangement regarding anesthesia services was such that either an anesthetist or an anesthesiologist performed the anesthesia services required. Each health care professional had a certain number of scheduled surgeries for which he or she was responsible for the anesthesia services. Upon completion of the scheduled surgeries, the scheduled provider was permitted to leave the hospital and was not required to be on call that day. The other provider was on call and was required to be available by telephone or pager and to respond within thirty (30) minutes of the call or page.
In September of 1990, Franklin hired Dr. Valentino Reyes as a full-time anesthesiologist. At that time, plaintiff and Dr. Reyes began sharing surgical duty and call. However, on September 4, 1991, Dr. Reyes suffered a stroke and was unable to perform his duties. Consequently, Franklin hired a contract employee to share the anesthesia duties with plaintiff. Between September of 1991 and July of 1992, there were approximately sixty-five (65) days on which plaintiff was required to work without the assistance of a contract employee. In July of 1992, the hospital hired another anesthesiologist, who began sharing surgical duty and call with plaintiff.
Shortly thereafter, plaintiff met with the hospital administrator, Allen D. Morgan, and discussed with him her desire to be compensated for the sixty-five-day period in which she had worked without assistance. Morgan requested that plaintiff provide him with a monetary figure to indicate what she felt she was owed. Plaintiff prepared a summary of the cost of hiring contract CRNAs for approximately sixty-five (65) days and delivered it to Morgan. Plaintiff subsequently was informed that she would not be compensated for the time that she had worked without assistance.
By late 1993, plaintiff had accumulated 167.56 hours (approximately twenty days) in excess of the 224 hours of allowable carry-over PTO. Thomas Galloway, Franklin's director of human resources at the time, approached plaintiff about using her accrued PTO prior to her upcoming anniversary date of January 26, 1994. Galloway indicated to plaintiff that, although it was against hospital policy to pay employees for unused PTO, he would, nonetheless, discuss with Morgan the possibility of paying plaintiff for the unused time. Galloway subsequently informed plaintiff that the hospital would prefer to pay her for the time rather than hire a contract CRNA. Plaintiff relied on this statement and believed she would not lose the PTO exceeding 224 hours upon the arrival of her anniversary date.
*352 In early October, 1994, plaintiff approached Ann Jaques, Franklin's director of human resources at that time, and spoke with her regarding the number of hours of PTO that she had accumulated. Jaques informed plaintiff that she had a total of 555.32 hours of accrued PTO, only 224 of which could be carried over after plaintiff's anniversary date on January 26, 1995. In January of 1995, plaintiff applied to use some of her PTO. Plaintiff subsequently received a memorandum from Morgan, dated January 5, 1995, stating that he had checked plaintiff's personnel records and that she had only twenty-four (24) hours of PTO in excess of the 224 hours of allowable carry-over PTO.

FACTS
On February 26, 1995, plaintiff resigned from her position with Franklin, and she was paid for 224 hours of accrued PTO. On April 7, 1995, plaintiff filed a petition for compensation due. In the petition, plaintiff alleged that she repeatedly made demand upon Franklin for payment of the compensation due her, but that Franklin refused to pay any portion of the amount. Plaintiff claimed that Franklin was indebted to her for the following: (1) twenty (20) days of vacation pay, totaling $5,795.05 (for vacation which she did not take at the request of the hospital and for which the hospital agreed to compensate her); (2) compensation for sixty-five (65) days on which she worked without assistance, totaling $4,700.00; and (3) ninety (90) days of penalty wages, totaling $17,385.15, as well as costs and attorney's fees.
Franklin answered plaintiff's petition, contending that plaintiff was not entitled to the compensation. Franklin further contended that it was in good faith in its refusal to pay plaintiff the compensation demanded, as plaintiff had not earned the compensation and/or had failed to fulfill the conditions under which the claimed benefits had been offered.
On July 18, 1995, the matter proceeded to trial. On September 5, 1995, the trial court rendered judgment in favor of plaintiff and against Franklin.[1] In its reasons for judgment, the trial court made the following findings: (1) plaintiff was not entitled to compensation for working without assistance; (2) plaintiff was entitled to compensation for the unused vacation time, based on the doctrine of apparent authority (Galloway's apparent authority to deviate from hospital policy); (3) plaintiff was not entitled to penalty wages; and (4) plaintiff was entitled to attorney's fees and costs. The trial court ordered Franklin to pay plaintiff $5,795.05 for unused vacation time, $5,106.25 for attorney's fees, and $1,166.00 for expenses and ordered Franklin to pay all court costs.
Franklin appealed from the judgment, assigning the following specifications of error:
1. The trial court abused its discretion in finding Galloway had apparent authority to exempt plaintiff from Franklin's PTO policy, because Morgan never did anything to represent that Galloway had this authority.
2. The trial court abused its discretion in awarding plaintiff attorney's fees incurred in connection with her unemployment compensation claim.
3. The trial court abused its discretion and erred in awarding plaintiff $1,166 in court reporter fees for discovery depositions.
Plaintiff answered the appeal, seeking to have the judgment of the trial court modified to award her $4,700.00 in additional compensation for "working alone" and penalty wages in the amount of $17,385.15. Plaintiff also requested additional attorney's fees and costs incurred in the appellate proceedings.

UNPAID WAGES
At all times pertinent hereto, LSA-R.S. 23:631 [2] provided as follows:

*353 A. Upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge or resignation. Said payment shall be made at the place and in the manner which has been customary during the employment, except that payment may be made via United States mail to the laborer or other employee, provided postage has been prepaid and the envelope properly addressed with the employee's or laborer's current address as shown in the employer's records. In the event payment is made by mail the employer shall be deemed to have made such payment when it is mailed. The timeliness of the mailing may be shown by an official United States postmark or other official documentation from the United States Postal Service.
B. In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section. The employee shall have the right to file an action to enforce such a wage claim and proceed pursuant to Code of Civil Procedure Article 2592.
C. With respect to interstate common carriers by rail, a legal holiday shall not be considered in computing the three day period provided for in Subsection A of this Section. (Emphasis added.)
Thus, the employer must pay the amount then due under the terms of employment not later than three days following the date of discharge or resignation. Batiansila v. Advanced Cardiovascular Systems, Inc., 952 F.2d 893, 894 (5th Cir.1992); Cochran v. American Advantage Mortgage Company, Inc., 93-1480 pp. 6-7 (La.App. 1st Cir. 6/24/94); 638 So.2d 1235, 1239.
For the purposes of LSA-R.S. 23:631, unused vacation pay is equivalent to "amount then due under the terms of employment." Lambert v. Usry & Weeks, 94-216 p. 2 (La.App. 5th Cir. 9/14/94); 643 So.2d 1280, 1281; Garrison v. Burger King Corporation, 537 So.2d 834, 836 (La.App. 5th Cir.1989); Blankenship v. Southern Beverage Company, Inc., 520 So.2d 440, 441 (La.App. 1st Cir.1988). Once an employee's right to vacation benefits has vested, an employer cannot force forfeiture of this earned right. Blankenship v. Southern Beverage Company, Inc., 520 So.2d at 441; Lee v. Katz and Bestoff, Inc., 479 So.2d 459, 460 (La.App. 1st Cir.1985).

A. Vacation Pay (Apparent Authority)

Franklin contends that the trial court erred in finding that, as its human resources director, Galloway had the apparent authority to agree to pay plaintiff for her unused PTO which exceeded the maximum allowable amount of carry-over. Therefore, Franklin argues that the trial court erroneously awarded plaintiff compensation for her unused PTO in excess of 224 hours.
An agent is one who acts for or in place of another by authority from the latter. Oliver v. Central Bank, 26,932 p. 8 (La.App. 2nd Cir. 5/10/95); 658 So.2d 1316, 1321, writ denied, 95-1469 (La.9/22/95); 660 So.2d 477; Martin Fuel Distributors, Inc. v. Trans Gulf Fuel, Inc., 496 So.2d 473, 476 (La.App. 1st Cir.), writ denied, 498 So.2d 753 (La.1986). An agency relationship may be created by express appointment of a mandatary under LSA-C.C. art. 2985 or by implied appointment arising from apparent authority. Oliver v. Central Bank, 658 So.2d at 1321; Urbeso v. Bryan, 583 So.2d 114, 117 (La.App. 4th Cir.1991); Duplessis Cadillac, Inc. v. Creative Credit Services, Inc., 564 So.2d 336, 338-39 (La.App. 1st Cir.1990). Therefore, an agent's authority is composed of his actual authority, express or implied, together with the apparent authority which the principal has vested in him by his conduct. Boulos v. Morrison, 503 So.2d 1, 3 (La.1987); Duplessis Cadillac, Inc. v. Creative Credit Services, Inc., 564 So.2d at 339. As between principal and agent, the limit of an agent's authority to bind the principal is governed by the agent's *354 actual authority. However, as between principals and third parties, the limit of an agent's authority to bind the principal is governed by the agent's apparent authority. Boulos v. Morrison, 503 So.2d at 3.
Implied or apparent agency exists if the principal has the right to control the conduct of the agent and the agent has the authority to bind the principal. Urbeso v. Bryan, 583 So.2d at 117. Apparent agency arises when the principal has acted so as to give an innocent third party a reasonable belief that the agent had the authority to act for the principal, Urbeso v. Bryan, 583 So.2d at 117; Davidson v. Board of Trustees, State Employees Group Benefits Program, 481 So.2d 708, 711 (La.App. 1st Cir.1985), and the third party reasonably relies on the manifested authority of the agent. Duplessis Cadillac, Inc. v. Creative Credit Services, Inc., 564 So.2d at 339; Tate v. Hanover Insurance Company, 526 So.2d 1302, 1305 (La.App. 3rd Cir.), writ denied, 530 So.2d 569 (La.1988). Apparent agency is established by the words and conduct of the parties and the circumstances of the case. An agency relationship may be created even though there is no intent to do so. Urbeso v. Bryan, 583 So.2d at 117; Sales Purchase Corporation v. Puckett, 417 So.2d 137, 140 (La.App. 2nd Cir.), writ denied, 421 So.2d 250 (La.1982).
An agency relationship is never presumed; it must be clearly established. Fleet Finance, Inc. v. Loan Arranger, Inc., 604 So.2d 656, 658 (La.App. 1st Cir.1992); Duplessis Cadillac, Inc. v. Creative Credit Services, Inc., 564 So.2d at 338. The burden of proving apparent authority is on the party seeking to bind the principal. A third party may not blindly rely on the assertions of an agent, but has a duty to determine, at his peril, whether the agency purportedly granted by the principal permits the proposed act by the agent. Desormeaux v. Lalonde, 578 So.2d 226, 230 (La.App. 3rd Cir.), writs denied, 581 So.2d 705 and 706 (La.1991); Duplessis Cadillac, Inc. v. Creative Credit Services, Inc., 564 So.2d at 339. One must look from the viewpoint of the third party to determine whether an apparent agency has been created. AAA Tire & Export, Inc. v. Big Chief Truck Lines, Inc., 385 So.2d 426, 429 (La.App. 1st Cir.1980). A trial court's determination as to whether an apparent agency exists will not be reversed in the absence of manifest error. See Boulos v. Morrison, 503 So.2d at 3.
The testimony in the instant case included that of plaintiff, Thomas Galloway, Allen Morgan, Christopher Smith, and Ann Jaques.
Plaintiff testified that she was employed as a CRNA by Franklin from January of 1990, through February 26, 1995. Plaintiff earned an annual salary of $69,590.64 and received malpractice insurance, four (4) weeks of paid vacation, and continuing education expenses. Plaintiff explained that the hospital had a "use it or lose it" vacation policy. In other words, an employee was not allowed to carry-over more than 224 hours of PTO from one anniversary date to the next. If the PTO hours in excess of 224 hours of allowable carry-over were not used by the arrival of the employee's anniversary date, those hours were lost.
Plaintiff testified that, at the end of 1993, she had accumulated PTO of 167.56 hours (approximately twenty days) in excess of the 224 hours of allowable carry-over. At that time, she was approached by Thomas Galloway, Franklin's human resources director. Galloway informed plaintiff that, to prevent losing her excess time, she needed to use it prior to her January 26, 1994, anniversary date. Plaintiff responded that, in order for her to take any time off, it would be necessary for the hospital to hire contract anesthesia employees to work in her absence and that it would be very costly to do so.[3] Galloway then indicated to plaintiff that, although it was against hospital policy to pay employees for unused PTO in excess of the 224 hours of allowable carry-over, he would, nonetheless, discuss with Morgan the possibility of paying plaintiff for the excess time.
According to plaintiff, Galloway approached her within one week of their discussion *355 regarding her excess PTO, and he stated, "Oh, by the way, we would rather pay you." Plaintiff assumed that "we" meant Galloway and Morgan because Galloway had told her that he would speak to Morgan about paying her for the excess time. Plaintiff indicated that payment for her excess PTO would be "fine." Following the conversation with Galloway, plaintiff understood that she would not take off the excess time, but would be paid for it and that she would not lose the excess time upon the arrival of her anniversary date.
Plaintiff's January 26, 1994, anniversary date passed without her having used any of the excess time. Plaintiff's paycheck stub for the pay period ending February 5, 1994, showed 391.68 hours of accumulated PTO, which indicated that the 167.56 hours of excess time had, in fact, been carried over beyond her anniversary date. Plaintiff's paycheck stubs continued to reveal that the 167.56 excess hours were being carried over.
In early October of 1994, plaintiff spoke with Ann Jaques, who had replaced Galloway as Franklin's human resources director. Plaintiff inquired about the number of hours of PTO she needed to use prior to her January 26, 1995, anniversary date so as not to lose any of the time. According to plaintiff, Jaques indicated that she had 555 hours already accumulated and that plaintiff would accrue approximately fifty-six (56) additional hours before her anniversary date. Jaques stated that, because plaintiff would not be allowed to carry over more than 224 hours on her January 26, 1995, anniversary date, plaintiff needed to use approximately 300 hours (about forty-eight days). Jaques wrote these figures on a "sticky note" and gave the note to plaintiff.[4]
Plaintiff testified that she told Jaques that Galloway had assured her that the hospital would pay her for her unused excess PTO. Jaques responded that the procedure was against hospital policy, but that she would talk to Morgan about it. Plaintiff saw Jaques within a week of their discussion, at which time Jaques indicated that she had spoken with Morgan and that Morgan would speak to the hospital's controller and get back to her regarding paying plaintiff for the excess PTO which had been carried over in 1994. Because her paycheck stub continued to show the hours being carried over, plaintiff did not follow up on this issue and believed that there was no problem.
In November of 1994, plaintiff mentioned to Morgan that the 167.56 hours of excess PTO had been carried over and that Galloway had indicated that the hospital would pay her for those hours. According to plaintiff, Morgan responded "Well, Tom [Galloway] did things like this." Morgan said nothing else about the excess hours being carried over.
In January of 1995, plaintiff applied to use some of her PTO. Plaintiff subsequently received a memo from Morgan, dated January 5, 1995, which stated that Morgan had checked plaintiff's personnel records and that she had only twenty-four (24) hours over the 224 hours of allowable time that could be carried over in 1995. However, plaintiff's paycheck stubs continued to show the 167.56 excess hours of PTO being carried over through the pay period ending January 21, 1995. Plaintiff's paycheck stub for the pay period ending February 4, 1995, showed that the 167.56 hours had been subtracted from the total.
Thomas Galloway testified that he was employed by Franklin as its human resources director from late 1992 until December 10, 1993. As the human resources director, he acted as a liaison between management and the employees. According to Galloway, among other things, he advised management on policies, procedures, laws, and interviewing processes. He dealt with employees regarding their salaries and benefits, including PTO.
Galloway testified that, in October or November of 1993, he spoke with plaintiff regarding her vacation time. He indicated to plaintiff that her anniversary date was approaching and that she had extra time over the maximum allowable carry-over which she needed to use prior to her anniversary date. Galloway stated that plaintiff responded that *356 she could not use the extra time because the hospital had no one to replace her. According to Galloway, he told plaintiff that he would speak to Morgan about the problem.
Galloway testified that he spoke to Morgan, informing him that plaintiff was unable to use her extra time because it would leave her department unattended. Galloway indicated that he and Morgan discussed the options and concluded that paying plaintiff for the extra time would save the hospital $15,000.00-$20,000.00. Morgan instructed Galloway to relay to plaintiff the message that she could continue working, without losing her excess time, and that she would be compensated for the unused excess PTO.
Allen D. Morgan testified that he has been employed as Franklin's hospital administrator since December of 1988. Morgan explained that the hospital has a written policy regarding PTO, which allows an employee only a maximum number of hours to be carried over from one anniversary date to the next, i.e., a "use it or lose it" policy. According to Morgan, he is unaware of any exception to the policy during his tenure.
Morgan testified that, in the fall of 1993, Galloway met with him and proposed that the hospital make an exception to the policy and pay plaintiff for her excess time, rather than have plaintiff use the time. He and Galloway discussed that the hospital would save money by doing so, but Morgan ultimately indicated that plaintiff would not be paid for the excess time. According to Morgan, he assumed Galloway relayed this information to plaintiff.
Morgan testified that he did not authorize Galloway to make an exception to the hospital policy regarding plaintiff's PTO. He testified further that Galloway, as human resources director, was "absolutely not" authorized to make exceptions to personnel policies and that making such exceptions was beyond the scope of Galloway's authority. Morgan acknowledged that he had told Galloway that Galloway represented Morgan's office throughout the hospital in personnel activities. However, Morgan stated that Galloway's actions could not override hospital policy.
Christopher Smith testified that he is employed as Franklin's controller. Smith indicated that he is familiar with the hospital's PTO policy. According to Smith, Morgan asked him whether they should consider a variance from hospital policy with regard to plaintiff's excess PTO. Smith responded that, if a variance was to be made, the whole policy should be changed so as to treat all employees equally. Smith testified that, if there were a policy change, he would need to be made aware of it for budgeting and managing purposes. Smith stated that he was never notified that an exception had been made for plaintiff or that a policy change had been implemented.
Ann Jaques testified that she is employed as Franklin's human resources director and is responsible for, among other things, personnel records, benefits, and compensation. Jaques stated that she is familiar with Franklin's personnel policy manual and that she is unaware of any exception being made to the policy during her tenure. Jaques indicated that the hospital's PTO policy is such that, on an employee's anniversary date, any unused PTO in excess of 224 hours is deleted automatically by computer. However, Jaques acknowledged that the old computer system did not automatically calculate and delete PTO. According to Jaques, in October of 1994, she gave plaintiff a note, listing plaintiff's total number of PTO hours, which she had obtained from a computer print-out.
The trial court considered all of the above testimony, as well as the documentary evidence. In her reasons for judgment, the trial judge indicated that numerous considerations had led her to conclude that Galloway had the apparent authority to bind Franklin with regard to the agreement to pay plaintiff for her unused excess PTO. The trial court listed those considerations as follows:
First, the very nature of Galloway's position at FFH, Director of Human Resources, manifested to the employees of FFH that Galloway had responsibility and authority to deal with personnel matters. In Galloway's job description are such duties as dealing with employees, their salaries and their benefits. It was Galloway who approached Barrilleaux about using *357 her PTO time and suggested the alternative of being paid; Barrilleaux did not approach Galloway in this regard. Therefore, Galloway was permitted by Morgan to discuss PTO and other personnel matters. This is a manifestation to a third party. This third party, Barrilleaux, relied upon her conversation when she did not go forward with a plan to take vacation.
Galloway testified that he spoke with Morgan in the fall of 1993 about paying Barrilleaux for PTO; Morgan did not respond to her until January of 1995, after Galloway had left. At no time during the following year and a half did Morgan tell Barrilleaux that she would not be getting paid for her PTO, and at no time did Morgan tell Barrilleaux that Galloway had no authority to make exceptions to the hospital personnel policy. Morgan testified that he had contact with Barrilleaux two or three times a week. He must have been aware that she had not taken her vacation; to do so would have meant that he would have had to hire costly anesthesia replacements. Morgan, in his capacity as hospital administrator, permitted Galloway to make entries on the computer which generated paychecks; these checks continued to show the PTO hours. The policy also manifested to Barrilleaux that the hospital had a record of the PTO she was owed and did not object to it.
Furthermore, Barrilleaux testified that when Jaques took over as personnel director, Jacques spoke with Morgan about what to do about the accrued PTO. Morgan did not give her an answer. Whether or not Morgan actually authorized the agreement with Barrilleaux, he certainly took no steps whatsoever to indicate to her in that following year and [one] half that he objected to the arrangement.
We have thoroughly reviewed the entire record in this matter. Given the various considerations listed by the trial court and the entirety of the testimony and documentary evidence, we find that there is a reasonable factual basis for the trial court's determination that Galloway had the apparent authority to convey to plaintiff that she would be paid for her unused excess PTO. Furthermore, the trial court's conclusion that plaintiff is entitled to compensation for the unused PTO is not manifestly erroneous.[5]

B. Additional Compensation for "Working Alone"

Plaintiff contends that the trial court erred in failing to award her compensation for sixty-five (65) days on which she worked without assistance.
According to plaintiff, when she was hired by Franklin, she discussed with Morgan that she would not work without assistance, and he assured her that the responsibilities of the anesthesia department would be shared.
Plaintiff explained that the hospital's arrangement regarding anesthesia services was such that either an anesthetist or an anesthesiologist performed the anesthesia services required in the hospital's two (2) surgical rooms. Each person had a certain number of scheduled surgeries for which he or she was responsible for the anesthesia services. Upon the completion of the scheduled surgeries, either the anesthetist or the anesthesiologist was permitted to leave the hospital and was not required to be on call that day. The other was on call and was required to be available by telephone or pager and to respond within thirty (30) minutes of the call or page.
Plaintiff testified that, in September of 1990, Franklin hired Dr. Valentino Reyes as a full-time anesthesiologist. At that time, plaintiff and Dr. Reyes began sharing surgical duty and call. However, on September 4, 1991, Dr. Reyes suffered a stroke and was unable to perform his duties. Consequently, Franklin hired a contract employee to share the anesthesia duties with plaintiff through July of 1992. However, between September of 1991 and July of 1992, there were approximately sixty-five (65) days on which plaintiff was required to work without the assistance of a contract employee. In July of 1992, the hospital hired Dr. Alfonse as a full-time anesthesiologist, *358 and he began sharing surgical duty and call with plaintiff.
Plaintiff testified that she met with Morgan and discussed with him her desire to be compensated for the sixty-five-day period in which she had worked without assistance. According to plaintiff, Morgan indicated that he thought she was due the extra compensation and requested that plaintiff provide him with a monetary figure to indicate what she felt she was owed. Plaintiff stated that Morgan said he wanted to know what she thought was "fair." Plaintiff prepared a summary of the cost of hiring contract CRNAs for approximately sixty-five (65) days and delivered it to Morgan.
Between August of 1992 and September of 1994, plaintiff spoke with Morgan and Smith numerous times regarding the extra compensation, but plaintiff was unable to get an answer from either of them. In October of 1994, plaintiff approached Smith and asked what he and Morgan had decided with regard to paying her the extra compensation. During their conversation, Morgan walked into the room, and Smith asked him what he planned to do. Morgan responded that he did not have time to deal with the matter that week.
On October 28, 1994, plaintiff received a memo from Morgan, indicating that he had asked Smith to review the documentation submitted by plaintiff regarding her extra compensation. Attached to Morgan's memo was a memo to him from Smith, dated October 27, 1994, concluding that no additional pay was due plaintiff. Morgan suggested that plaintiff meet with him, Jaques, and Smith during the week of November 7, 1994, to "finalize the situation."
Plaintiff testified that she met with Morgan and Smith during the beginning of November and that neither Morgan nor Smith indicated that she would not be paid the extra compensation. Rather, Morgan requested that plaintiff provide him with a copy of the call schedule for the time period during which plaintiff had worked without assistance. Plaintiff subsequently gave Morgan a copy of the call schedule, which showed that plaintiff was required to take extra call on forty-seven (47) of the sixty-five (65) days on which she would have otherwise been off.
On February 18, 1995, Morgan wrote plaintiff a letter, indicating that the hospital owed her no supplementary compensation, noting as follows:
As an "exempt" employee, your compensation is consistent with "getting the job done," not related to hourly and/or shift activities.... Remember, for a very long time your actual work time has been less than half-time at full-time compensation.
On cross-examination, plaintiff acknowledged that she was a salaried employee and that her salary was not affected by the number of hours she actually worked. Plaintiff also acknowledged that, between January and September of 1990, she often was required to work without assistance and without additional compensation. Plaintiff stated further that, during the sixty-five (65) day period in which she worked without assistance, she did not discuss extra compensation with Morgan.
Morgan testified that, when plaintiff was hired by Franklin in January of 1990, he indicated to her that he planned to hire additional anesthesia personnel to assist plaintiff. However, he did not indicate to plaintiff that she would be paid extra if she ever had to work without assistance. According to Morgan, although contract employees were hired, plaintiff was sometimes required to work without assistance, and, on those occasions, plaintiff did not request additional compensation. In September of 1990, Franklin hired a full-time anesthesiologist, Dr. Reyes, to assist plaintiff with the anesthesia services.
Morgan explained that, in September of 1991, Dr. Reyes suffered a stroke and was unable to perform his duties at Franklin. Although contract employees were sometimes hired between September of 1991 and July of 1992, plaintiff was required to work without assistance on approximately sixty-five (65) days during that time period. According to Morgan, plaintiff did not request additional compensation during the period in which she worked alone.
*359 Morgan stated that, in July of 1992, Franklin hired a full-time anesthesiologist, Dr. Alfonse, to assist plaintiff with the anesthesia services. Morgan indicated that, sometime after that, plaintiff requested additional compensation for the sixty-five (65) days on which she had worked without assistance. Morgan stated that, although he did not agree with plaintiff that the additional compensation was owed, he asked plaintiff to provide him with some data to show what she felt she was owed. Plaintiff subsequently provided Morgan with a packet of information regarding rates for hiring contract employees for a sixty-five-day period, and Morgan indicated that the information remained on his desk for several months. According to Morgan, he wanted to discuss plaintiff's request with Smith (the controller) and the supervisory nursing staff. Morgan eventually gave the information to Smith for his evaluation, and it was decided that plaintiff was not entitled to the additional compensation.
Smith testified that Morgan requested that he evaluate plaintiff's request for additional compensation. Because he did not receive enough information on which to base a decision, the data remained on his desk for some time. Smith stated that he subsequently returned the information to Morgan, who kept it for a while. Sometime later, Smith met with Morgan to discuss the information. According to Smith, it was his conclusion that plaintiff was entitled to additional compensation only if she and Morgan had agreed to such. Upon learning that Morgan and plaintiff had no such agreement, Smith determined that the additional compensation was not owed to plaintiff and sent a memo to Morgan indicating this.
In her reasons for denying plaintiff's claim for additional compensation, the trial court stated as follows:
Upon review of the evidence submitted at trial, the briefs submitted by counsel, and relevant law on this issue, the court is in agreement with defendant FFH; Barrilleaux is not entitled to additional compensation for the 65 days she worked alone. Her employment was never conditioned upon sharing on-call time. Testimony demonstrates that Barrilleaux did not raise the issue of additional compensation until after Dr. Reyes had been replaced. Testimony also shows that when plaintiff was hired, she understood that she would be working alone until there was another anesthetist. The Fair Labor Standards Act (FLSA) provides exemptions to the general rules of overtime pay. Specifically, FLSA provides exceptions for professionals; registered nurses are recognized by the Department of Labor as professional employees and exempt from FLSA. 29 C.F.R. Sec. 541.302(E)(1). In order to recover additional compensation, Barrilleaux has the burden of proving that she was guaranteed by Morgan that she would not have to work alone. Barrilleaux has not carried this burden of proof.
The trial court's determination that plaintiff failed to establish her right to additional compensation is a factual determination which will not be disturbed on review in the absence of manifest error. After thoroughly reviewing the entire record in this matter, we conclude that there is a reasonable factual basis for this determination, and, additionally, it is not manifestly erroneous. See Stobart v. State Through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).

PENALTY WAGES
LSA-R.S. 23:632 addresses penalty wages for an employer's failure to comply with LSA-R.S. 23:631 and provides as follows:
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer *360 or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
Thus, to recover penalties under LSA-R.S. 23:632, three criterion must be met. The employee must prove (1) that wages were due and owing; (2) that demand for payment was made at the place where the employee was usually paid; and (3) that the employer failed to pay upon demand. Sam v. Jhane Home Health Care Services, Inc., 95-0081 p. 2 (La.App. 4th Cir. 6/7/95); 657 So.2d 559, 561.
LSA-R.S. 23:632 is penal in nature and must be strictly construed. Boudreaux v. Hamilton Medical Group, Inc., 94-0879 p. 4 (La.10/17/94); 644 So.2d 619, 621; Sam v. Jhane Home Health Care Services, Inc., 657 So.2d at 561; Guinn v. International Maintenance Corporation, 583 So.2d 915, 917 (La. App. 1st Cir.1991). This statute is designed to compel prompt payment of wages upon an employee's discharge or resignation. Boudreaux v. Hamilton Medical Group, Inc., 644 So.2d at 621.
Penalty wages are not to be absolutely imposed when the facts indicate that there is an equitable defense. Boudreaux v. Hamilton Medical Group, Inc., 644 So.2d at 621; Cochran v. American Advantage Mortgage Company, Inc., 638 So.2d at 1239. However, it is only a good faith, non-arbitrary defense to liability for unpaid wages which will permit the courts to excuse the employer from the imposition of penalty wages. Cochran v. American Advantage Mortgage Company, Inc., 638 So.2d at 1239-40; Henderson v. Kentwood Spring Water, Inc., 583 So.2d 1227, 1232 (La.App. 1st Cir. 1991). Whether or not there is an equitable defense to penalty wages depends on the particular facts of each case. Cochran v. American Advantage Mortgage Company, Inc., 638 So.2d at 1240; Henderson v. Kentwood Spring Water, Inc., 583 So.2d at 1232. Where there is a bona fide dispute over the amount of wages due, courts will not consider failure to pay as arbitrary refusal and generally will refuse to award penalties. Cochran v. American Advantage Mortgage Company, Inc., 638 So.2d at 1240; Washington v. Buffalo Mills Lumber Company, Inc., 451 So.2d 665, 667 (La.App. 1st Cir.1984).
A trial court's determination of whether a defendant is in bad faith is a question of fact and is, therefore, subject to the manifest error standard of review. Domite v. Imperial Trading Company, Inc., 94-16 p. 7 (La.App. 3rd Cir. 8/3/94); 641 So.2d 715, 720. Reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed even though the appellate court may feel that its own evaluations and inferences are as reasonable. Shelton v. Wall, 614 So.2d 828, 832 (La.App. 2nd Cir. 1993). When the trier of fact's findings are reasonable in light of the entire record, an appellate court may not reverse a choice between two permissible views of the evidence. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882-83; Shelton v. Wall, 614 So.2d at 832. The issue to be resolved by the appellate court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one in view of the record in its entirety. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882; Harris v. Bronco Construction Company, 93-2139 p. 5 (La. App. 1st Cir. 10/7/94); 644 So.2d 805, 807, writ denied, 94-2740 (La.1/6/95); 648 So.2d 931.
Because we have determined that the trial court did not err in finding that plaintiff was entitled to compensation for her unused vacation time, we must now determine whether the trial court erred in failing to award plaintiff penalty wages. In doing so, we must determine whether Franklin's failure to pay plaintiff for her unused vacation time was in bad faith or whether it had a valid, equitable defense for non-payment.
In its reasons for judgment, the trial court indicated that Franklin was not in bad faith in its refusal to pay plaintiff for her unused vacation time. Specifically, the court stated that a good faith dispute existed as to whether plaintiff was actually owed vacation pay and that Franklin had asserted an equitable defense of lack of apparent authority. Accordingly, the trial court ruled that plaintiff *361 was not entitled to an award of penalty wages.
We have thoroughly reviewed the entire record in this matter and find that there is a reasonable factual basis for the trial court's finding. Furthermore, that finding is not manifestly erroneous.

COSTS
Franklin contends that the trial court abused its discretion in taxing defendant with $1,166.00 in court reporter fees for discovery depositions which were not introduced into evidence at trial.
LSA-C.C.P. art.1920 states that the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable. LSA-R.S. 13:4533 describes the expenses which can be taxed as costs and provides that "[t]he costs of the clerk, sheriff, witness' fees, costs of taking depositions and copies of acts used on the trial, and all other costs allowed by the court, shall be taxed as costs."
The general rule is that only depositions "used on the trial" are taxable as costs. LSA-R.S. 13:4533; Boutte v. Nissan Motor Corporation, 94-1470 p. 13 (La.App. 3rd Cir. 9/13/95); 663 So.2d 154, 162. Depositions introduced and accepted into evidence are "used on the trial" for purposes of LSA-R.S. 13:4533. Succession of Franz, 242 La. 875, 139 So.2d 216, 219 (1962). Accordingly, if a deposition is not used at trial, the cost of that deposition, including deponent's fee for giving the deposition, may not be taxed as costs. Moran v. Harris, 93-2227 p. 3 (La.App. 1st Cir. 11/10/94); 645 So.2d 1248, 1250.
The trial judge has great discretion in awarding costs (including expert witness fees, deposition costs, exhibit costs, and related expenses). Boutte v. Nissan Motor Corporation, 663 So.2d at 162. Therefore, a trial court's award of costs will not be disturbed upon review in the absence of an abuse of that discretion. See Moran v. Harris, 645 So.2d at 1250.
In the instant case, plaintiff's attorney introduced into evidence an affidavit, listing his expenses. Included in the affidavit is an expense of $1,166.00 for court reporter fees. However, a review of the record reveals that there were no depositions introduced or accepted into evidence at trial. Therefore, we conclude that the trial court abused its discretion in taxing, as costs, the court reporter fees for discovery depositions which were not used at trial.

ATTORNEY'S FEES
On appeal, Franklin contends that the trial court erred in the award of attorney's fees. Franklin reasons that the trial court abused its discretion in awarding plaintiff attorney's fees incurred in connection with her unemployment compensation claim. In her answer to the appeal, plaintiff contends that she is entitled to additional attorney's fees incurred in the appellate proceedings.
LSA-R.S. 23:632 provides for attorney's fees in a suit for unpaid wages. However, that statute is penal in nature and must be strictly construed. Boudreaux v. Hamilton Medical Group, Inc., 94-0879 p. 4 (La.10/17/94); 644 So.2d 619, 621; Sam v. Jhane Home Health Care Services, Inc., 95-0081 p. 2 (La.App. 4th Cir. 6/7/95); 657 So.2d 559, 561. LSA-R.S. 23:632 provides, in pertinent part, as follows:
Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation. (Emphasis added.)

A. Inclusion of Fees Related to Unemployment Compensation Claim

Because plaintiff filed a "well-founded suit for any unpaid wages," the trial court awarded plaintiff attorney's fees in accordance with LSA-R.S. 23:632. The trial court awarded plaintiff $125.00 per hour for 40.85 hours of work, 3.70 of which were spent preparing for and attending an unemployment compensation hearing.
*362 We conclude that a strict construction of LSA-R.S. 23:632 authorizes an award for reasonable attorney's fees arising out of a "well-founded suit" for unpaid wages, not those fees arising in connection with a claim for unemployment compensation. Accordingly, we find that the trial court abused its discretion in including in its award those attorney's fees associated with plaintiff's unemployment compensation claim. Therefore, the judgment of the trial court is amended to award plaintiff attorney's fees in the amount of $4,643.75 (40.85 hours - 3.70 hours = 37.15 hours × $125.00 per hour), rather than $5,106.25.

B. Additional Attorney's Fees for Appellate Work

Plaintiff answered Franklin's appeal, requesting additional attorney's fees for appellate work.
Additional attorney's fees are usually awarded on appeal when the defendant appeals, obtains no relief, and the appeal has necessitated additional work on the part of plaintiff's counsel, provided that the plaintiff appropriately requests an increase. Smith v. Tudor Construction, 25,783 p. 4 (La.App. 2nd Cir. 5/4/94); 637 So.2d 666, 669; Pitcher v. Hydro-Kem Services, Inc., 551 So.2d 736, 740 (La.App. 1st Cir.), writ denied, 553 So.2d 466 (La.1989). However, even though requested, additional attorney's fees may not be granted where the appellate court finds that the amount awarded in the trial court was sufficient to compensate counsel. Fontenot v. Flaire, Inc., 26,055 p. 11 (La.App. 2nd Cir. 8/17/94); 641 So.2d 1062, 1068.
In the instant case, plaintiff properly requested additional attorney's fees in a timely filed answer. However, because Franklin has obtained relief on appeal, we find that an additional award of attorney's fees is not warranted.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is amended to reduce plaintiff's total award from $12,067.30 to $10,438.80. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are assessed between the parties equally.
AFFIRMED AS AMENDED.
NOTES
[1] On September 5, 1995, the trial court signed a written judgment in accordance with its previous rulings.
[2] This statute was amended by Acts 1995, No. 325, § 1, effective August 15, 1995. The amended version of the statute divides paragraph A into subparagraphs A(1)(a) (discussing the employer's duty to pay to the employee the amount then due within three days of the discharge of the employee), A(1)(b) (discussing the employer's duty to pay the employee the amount then due within fifteen days of the resignation of the employee), A(2) (discussing the place and manner of payment), and A(3) (discussing the non-applicability of the subsection when there is a collective bargaining agreement).
[3] Plaintiff indicated that contract anesthesia employees would cost the hospital approximately $4,000.00 per week.
[4] The note was introduced into evidence as plaintiff's exhibit number one.
[5] We note that Franklin did not appeal the amount of compensation awarded plaintiff for PTO, but only her entitlement to it via the apparent authority of Galloway.