IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-30470

Summary Calendar

_____


ROBERT J LEDET

                              Plaintiff - Appellant

     v.

FLEETWOOD ENTERPRISES, INC; ET AL

                              Defendants

FLEETWOOD MOBILE HOMES OF INDIANA, INC

                              Defendant - Appellee


_____

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 99-CV-895-N
_____
December 22, 2000
Before KING, Chief Judge, and WIENER and DENNIS, Circuit Judges.

PER CURIAM:[*]

     Plaintiff-Appellant Robert J. Ledet appeals from the

district court's grant of summary judgment in favor of Defendant-

Appellee Fleetwood Mobile Homes of Indiana.  We AFFIRM.

_____

     [*]  Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

## I. FACTUAL AND PROCEDURAL HISTORY

On June 30, 1997, Robert J. Ledet purchased a new 1997 Fleetwood Discovery motor home (the "Motor Home") from Dixie Motors ("Dixie") in Hammond, Louisiana. Fleetwood Mobile Homes, Inc. ("Fleetwood") was the manufacturer of the Motor Home, but its chassis and drive train were supplied by third-party defendant Freightliner Custom Chassis Corporation ("FCCC") and its diesel engine by third-party defendant Cummins Engine Company, Inc. ("Cummins").[1]

On April 25, 1998,[2] Ledet and his fiancee, Deborah Harris, drove the Motor Home to a campground in Navarre Beach, Florida. Upon arriving at the campground, they noticed that the Jeep Wrangler, which had been towed behind the Motor Home was covered in diesel fuel. Ledet called Dixie for instructions, and Dixie gave him Fleetwood's toll-free number. Ledet then called Fleetwood, which referred him to Cummins.[3] Cummins told Ledet it would "track down a rep in the area that would take care of the

---

[1] The Motor Home was covered by several express warranties. The Fleetwood warranty expressly disclaimed coverage of the engine and the chassis, as those items were covered by separate warranties by their manufacturers, Cummins and FCCC respectively. Furthermore, the Fleetwood warranty did not cover normal maintenance or service items, or, if allowed by state law, incidental or consequential damages.

[2] At this time, the Motor Home had approximately 3300 miles on it, 1000 of which were on the odometer when Ledet took delivery from Dixie.

[3] Ledet was unsure whether Fleetwood gave him Cummins's number or called Cummins for him.

problem," and ultimately, Cummins Alabama, Inc. ("CAI"), an independent distributor of Cummins engines, called Ledet and told him it would send a mechanic the next day.

On April 26, 1998, the CAI mechanic, Larry Leaird, inspected the Motor Home and identified the problem as a split diesel fuel line, which needed to be replaced.[4]  Although Ledet wished to have the Motor Home repaired at the campsite, Leaird informed Ledet that CAI would only perform the work at its Mobile, Alabama facility.  Therefore, the next day Leaird called All Pro Towing and Recovery, Inc. ("All Pro") to tow the Motor Home to the CAI facility.  The tow truck operator sent by All Pro spent two hours hooking up the Motor Home and began towing it to Mobile.  Ledet and Harris followed in the Jeep Wrangler.

During the drive, a truck driver informed the tow truck operator that the rear wheels of the Motor Home were bulging outward.  The tow truck operator pulled to the side of the road and was shortly thereafter joined by Ledet and Harris.  Ledet noticed that the rear wheels of the Motor Home were at an angle and that smoke filled its interior.  Further inspection later

---

[4]  In Ledet's deposition, he stated that Leaird told him this problem was "very common."

revealed that, due to negligent towing,[5] the axle of the Motor Home had failed, causing severe mechanical and interior damage.

On March 19, 1999, Ledet filed a Complaint against Dixie and Fleetwood alleging that the defects in the fuel line and the axle were redhibitory defects, entitling him to either recission of the sale or damages. Alternatively, Ledet alleged that the defendants were liable under negligence for the negligent towing of All Pro under the theories of respondeat superior, breach of warranty, detrimental reliance, and agency. After Dixie was dismissed as a defendant,[6] Fleetwood filed a third-party Complaint against FCCC and Cummins, alleging that the problems asserted by Ledet "involve the engine and/or drive train components and/or chassis and/or related components supplied by Cummins and/or Freightliner and for which those two corporations separately warranted to the purchaser, original complainant."

On March 3, 2000, Fleetwood filed a Motion for Summary Judgment, which the district court granted. Ledet appeals.

---

[5] Ledet originally alleged that the damage may have been caused by a defective axle. However, all experts agreed that the damage was caused by negligent towing, and Ledet conceded that point in his Opposition to Fleetwood Enterprises, Inc. Motion for Summary Judgment (the "Opposition").

[6] Pursuant to the plaintiff's Voluntary Motion to Dismiss Without Prejudice, Dixie was dismissed as a defendant on July 7, 1999.

## II. STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment de novo, "applying the same criteria used by the district court in the first instance."  Bussian v. RJR Nabisco, 223 F.3d 286, 293 (5th Cir. 2000).  Summary judgment is appropriate when the record shows "'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  Allen v. Rapides Parish Sch. Bd., 204 F.3d 619, 621 (5th Cir. 2000) (quoting Taylor v. Principal Fin. Group, Inc., 93 F.3d 155, 161 (5th Cir. 1996)).  The party seeking summary judgment bears the burden of demonstrating an absence of evidence to support the nonmovant's case, "which it believes demonstrate[s] the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  However, if the party seeking summary judgment will bear the ultimate burden on the issue at trial, "it must adduce evidence to support each element of its defenses and demonstrate the lack of any genuine issue of material fact with regard thereto."  Rushing v. Kan. City S. Ry. Co., 185 F.3d 496, 505 (5th Cir. 1999), cert. denied, 120 S. Ct. 1171 (2000).

Where the opposing party bears the burden of proof at trial, the moving party need not submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing

5

party's case.  See Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).  After the movant has presented a properly supported motion for summary judgment, the burden shifts to the nonmoving party to show with "significant probative evidence" that there exists a genuine issue of material fact.  See Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994).  A fact is "material" if its resolution in favor of one party might affect the outcome of the lawsuit under governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  See id.  "[W]e must view all facts in the light most favorable to the nonmovant." Cardinal Towing & Auto Repair, Inc. v. City of Bedford, 180 F.3d 686, 690 (5th Cir. 1999).

## III. EXISTENCE OF A REDHIBITORY DEFECT

Ledet concedes that the district court correctly dismissed its claim that the Motor Home had a defective axle,[7] but contends that the court erred in dismissing his claim that the Motor Home

---

[7]  In his original Complaint, Ledet alleged that the Motor Home had both a defective fuel line and a defective axle at the time of purchase.  However, in his Opposition, Ledet stated "It is pretty well established that the failure of the axle was due to the way in which the motor coach was towed."  He made no other references to either of the alleged redhibitory defects.  On the basis of that statement, the district court concluded that "Ledet no longer wishes to pursue his allegations of redhibitory defect."

had a defective fuel line, which also constituted a redhibitory defect. Ledet asserts that because Fleetwood failed to address the issue of the defective fuel line in its Motion for Summary Judgment, it did not meet its evidentiary burden, and therefore, the district court should not have granted summary judgment as to both of Ledet's redhibitory defect claims.

While admitting that no mention of the allegedly defective fuel line was made in its Motion for Summary Judgment, Fleetwood maintains that the grant of summary judgment on both redhibitory defect claims was appropriate. First, Fleetwood contends that as there was no mention of this redhibitory defect claim in either its Motion for Summary Judgment or Ledet's Opposition, raising the issue at this time is inappropriate.[8]

We recognize that the party seeking summary judgment bears the burden of demonstrating an absence of evidence to support the nonmovant's case, see Celotex, 477 U.S. at 323; however, we also note that the party opposing summary judgment has a duty to inform the district court of the reasons why summary judgment is not appropriate. See Hargrave v. Fibreboard Corp., 710 F.2d 1154, 1164 (5th Cir. 1983) ("In DeBardeleben v. Cummings, 453

[8] Furthermore, Fleetwood argues that there is no evidence on the record to support the claim that the defect existed or, even if it did, that it rose to the level of a redhibitory defect. Next, Fleetwood asserts that even if the fuel line was defective, it was not the proximate cause of the damage to the vehicle. Finally, Fleetwood contends it should not be liable because, even if such a redhibitory defect existed in the fuel line, the engine was separately warranted by Cummins.

F.2d 320 (5th Cir. 1972), this court characterized as almost axiomatic 'the principal that any genuine material issue of fact must somehow be shown to exist in the District Court.'"). Although Ledet did allege two separate redhibitory defects in his Complaint, a defective fuel line and a defective axle, and Fleetwood arguably failed to meet its burden on summary judgment with regard to the alleged fuel-line defect,[9] those facts do not end the inquiry. Ledet's failure to raise the issue in front of the district court in Opposition to Fleetwood's Motion for Summary Judgment constitutes a waiver of the issue for summary judgment purposes, regardless of whether the issue was raised in Ledet's Complaint.

"[W]e have specifically refused to overturn a summary judgment motion on a theory not advanced in opposition to the motion in the district court." Savers Fed. Sav. & Loan Assoc. v. Reetz, 888 F.2d 1497, 1501 (5th Cir. 1989). Fleetwood moved for complete summary judgment. In so doing, it argued that it should not be liable for the damage to the Motor Home (1) because the

---

[9]  Fleetwood argued (1) that it should not be liable because improper towing, not a redhibitory defect, caused the damage to the vehicle; and (2) even if there were defects in the chassis or the drive, those items were covered by their respective manufacturers and not Fleetwood. Nowhere in its Motion for Summary Judgment did Fleetwood specifically assert that there was inadequate evidentiary support for Ledet's claim that the defective fuel line constituted a redhibitory defect. In fact, in its brief on appeal, Fleetwood admits: "Not mentioned in the Motion for Summary Judgment . . . was a 'defective' fuel line."

8

damage was not caused by a redhibitory defect and (2) because even if a redhibitory defect did exist, the engine and the chassis were covered by separate warranties. Even though Fleetwood did not specifically assert a lack of evidence to support the claim of a redhibitory defect in the fuel line, Ledet was clearly on notice that Fleetwood was moving for summary judgment on both rehibitory defect issues. In his Opposition, Ledet's only mention of his redhibitory defect claims was an admission that the experts all agreed that the damage to the vehicle had not been caused by a redhibitory defect.

"In Batterton, we reapproved and applied Hargrave's holding that even a pleaded theory was waived when it was not raised in opposition to a motion for summary judgment." Id.; see Batterton v. Tex. Gen. Land Office, 783 F.2d 1220, 1224-25 (5th Cir. 1986); Hargrave, 710 F.2d at 1163-64; see also Liberles v. County of Cook, 709 F.2d 1122, 1126 (7th Cir. 1983) ("It is a well-settled rule that a party a opposing summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal.).

In Hargrave, we found that the appellant Nicolet, Inc. ("Nicolet") had "abandoned his alternative theories of recovery by failing to present them to the trial court." 710 F.2d at 1164. Hargrave, one of the asbestos litigation cases, involved varying procedural claims of a third-party plaintiff Nicolet, a

9

third-party defendant T & N, and a former subsidiary of T & N,
Keasbey & Mattison Co. Nicolet had filed a third-party complaint
against T & N based on three different theories: an alter ego
theory, a successor-in-interest theory, and a
contribution/indemnification theory. See id. at 1156. T & N
subsequently filed motions for summary judgment on the merits,
alleging that the actions were barred by the running of the
statute of limitations, that the degree of control was
insufficient to warrant alter ego liability, and that no basis
existed for the imposition of succession in interest liability.
See id. Nicolet's response addressed only the alter ego theory
and did not address any of T & N's other arguments or Nicolet's
own alternative theories of liability. See id. at 1157. In
granting summary judgment for T & N, the district court addressed
only the alter ego theory. See id. at 1157. Again, in its
motion for reconsideration, which was refused by the district
court, Nicolet addressed only the alter ego theory. See id. at
1157-58. Ultimately, in its appeal, Nicolet asserted that the
district court's failure to consider the alternative theories
presented in its third-party complaint was error. See id. at
1163. We found

> [a]lthough the complaint refers to both of these
> grounds of recovery, Nicolet never broached them again
> until this appeal. Neither Nicolet's brief in
> opposition to T & N's motion for summary judgment nor
> its comments at oral argument on the summary judgment
> motion mentioned a single fact that would trigger a
> genuine issue on these theories. This failure to raise

10

> potential factual issues is especially enlightening in view of T & N's head-on challenge in its motion for summary judgment; T & N not only attacked Nicolet's alternative successorship liability theory, but also raised its own independent ground for dismissal, the Pennsylvania survival of claims statute. Still Nicolet failed to present facts in support of its pleaded theories.

Id. at 1163-64 (footnote omitted). Because "Nicolet's opposition to the motion not only failed to present any data tending to establish the existence of a genuine issue of fact, but also completely failed even to refer to its alternative theories of recovery," id. at 1164, Nicolet had abandoned those alternative theories of recovery and "the district court appropriately granted summary judgment for T & N on the whole case." Id.

The same situation is before us today. Although Ledet alleged the existence of a redhibitory defect in the fuel line in his Complaint, his complete failure to raise any legal or factual issue regarding that claim in his Opposition constitutes a waiver of the issue. See, e.g., Grenier v. Cyanamid Plastics, Inc., 70 F.3d 667, 678 (1st Cir. 1995) ("Even an issue raised in the complaint but ignored at summary judgment may be deemed waived. 'If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal.'" (quoting Vaughner v. Pulito, 804 F.2d 873, 877 n.2 (5th Cir. 1986))); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 (5th Cir. 1992) ("[T]his court . . . will not consider evidence or arguments that were not

11

presented to the district court for its consideration in ruling on the motion.").

Therefore, we affirm the decision of the district court granting summary judgment to Fleetwood on both of Ledet's redhibition claims.

### IV. AGENCY

The district court found that Fleetwood was entitled to summary judgment on Ledet's claim that All Pro and Cummins were acting on the apparent authority of Fleetwood and, therefore, that Fleetwood was responsible for their negligent acts. The court reasoned that in light of the language of the Fleetwood and the Cummins warranties, Fleetwood never assumed responsibility for the engine, and therefore, the alleged subsequent negligence of All Pro or CAI, when it referred Ledet to Cummins. Moreover, given the express language of the warranties, the court found that it was unreasonable for Ledet to believe Fleetwood had assumed responsibility for the engine. In fact, the district court interpreted Fleetwood's referral of Ledet to Cummins as an express denial of responsibility for the engine.

Ledet argues that because there is an issue of fact as to whether the waiver of the implied warranty was valid,[10] it was

---

[10] "To be effective such a limitation [to limit or exclude the implied warranty against redhibitory defects] must be contained in the contract of sale (or similar document), be clear and unambiguous, and must be brought to the buyer's attention or explained to him." <u>Datamatic, Inc. v. Int'l Bus. Machs. Corp.</u>, 795 F.2d 458, 464 (5th Cir. 1986). Ledet contends that whether

12

reasonable for him not to rely on the express language of the warranties.  He asserts that because Fleetwood referred him to Cummins, it manifested Cummins with its authority, and Ledet reasonably relied on that manifestation.  Fleetwood responds that in simply referring Ledet to the engine manufacturer, it made no manifestations or assertions on which Ledet could reasonable rely; therefore, Fleetwood should not be liable for the acts of two independent legal entities.  We agree.

Under Louisiana law, "[a]pparent authority is a judicially created concept of estoppel which operates in favor of a third party seeking to bind a principal for the unauthorized act of an apparent agent."   Boulos v. Morrison, 503 So. 2d 1, 3 (La. 1987).  "Implied or apparent agency exists if the principal has the right to control the conduct of the agent and the agent has the authority to bind the principal."  Urbeso v. Bryan, 583 So. 2d 114, 117 (La. Ct. App. 1991); see also Barrilleaux v. Franklin Found. Hosp., 683 So. 2d 348, 354 (La. Ct. App. 1996).

> For the doctrine of apparent authority to apply the principal must first act to manifest the alleged agent's authority to an innocent third party.  Second, the third party must rely reasonably on the manifested authority of the agent. . . . [T]he principal will be bound for the agent's actions if the principal has given an innocent third party a reasonable belief the agent had authority to act for the principal.

---

the waiver of the implied warranty against redhibitory defects is valid is a question of fact.

13

Boulos, 503 So. 2d at 3.  "Apparent agency is established by the words and conduct of the parties and the circumstances of the case.  An agency relationship may be created even though there is no intent to do so."  Urbeso, 583 So. 2d at 117; see also Barrilleaux, 683 So. 2d at 354.  However, "[a]n agency relationship is never presumed; it must be clearly established."  Barrilleaux, 683 So. 2d at 354.

> The burden of proving apparent authority is on the party seeking to bind the principal.  A third party may not blindly rely on the assertions of an agent, but has a duty to determine, at his peril, whether the agency purported granted by the principal permits the proposed act by the agent.

Id.

As Fleetwood met its summary judgment burden of demonstrating an absence of evidence to support Ledet's case, the burden shifted to Ledet to show with significant probative evidence that there exists a genuine issue of material fact.  The only evidence to which Ledet points is that Fleetwood referred him to Cummins; Fleetwood manufactured the vehicle; and Fleetwood chose Cummins to manufacture the engine.  We agree with the district court that, in light of the warranties, this is not sufficient evidence to establish a genuine issue of material fact that Fleetwood manifested authority in All Pro.  Additionally, we agree with the district court that Ledet's reliance on those

14

actions as a manifestation of authority in All Pro was unreasonable.[11]

## V. CONCLUSION

For the reasons stated above, we AFFIRM the judgment of the district court.

---

[11] Ledet's argument that his reliance was reasonable because Fleetwood cannot establish waiver of the implied warranty against redhibitory defects, discussed supra, is inapposite. The issue is whether it was reasonable for Ledet to rely on the fact that by referring Ledet to Cummins to repair the leak in the fuel line, Fleetwood manifested apparent authority in All Pro that would render Fleetwood liable for All Pro's allegedly negligent towing.