986 So.2d 707 (2008)
COLOR STONE INTERNATIONAL, INC.
v.
LAST CHANCE CDP, LLC and Newton & Associates, LLC.
No. 08-CA-35.
Court of Appeal of Louisiana, Fifth Circuit.
May 27, 2008.
*710 Bartley P. Bourgeois, Attorney at Law, Baton Rouge, Louisiana, for Plaintiff/Appellee.
W. Paul Andersson, Attorney at Law, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges SUSAN M. CHEHARDY, CLARENCE E. McMANUS, and FREDERICKA HOMBERG WICKER.
FREDERICKA HOMBERG WICKER, Judge.
Appellants, Last Chance CDP, LLC and Newton & Associates, Inc., appeal from a trial court judgment which modified the terms of their debt collection agreement with the plaintiff, Colorstone International, Inc. Appellee answered the appeal alleging that no contract for services existed between the parties and sought a return of all funds collected on its behalf, as well as attorney's fees and all court costs. For the reasons stated below, we reverse the judgment of the trial court in part, affirm in part, and render.

PROCEDURAL HISTORY
Colorstone International, Inc. (hereinafter, "Colorstone") filed a petition against defendants, Last Chance CDP, LLC (hereinafter, "Last Chance") and Newton & Associates, Inc. (hereinafter, "Newton") in First Parish Court, alleging, inter alia, that defendants improperly and without authorization performed collection of an unpaid account held by Colorstone. Following a bench trial, the trial judge held that a contract for services did exist between the parties. However, in so finding, the judge modified the terms of the contract. Last Chance assigns as error the fact that the trial court modified a valid contract for services, thereby reducing the collection rate from 40% to 25% of the total collected. Colorstone asserts that the trial judge erred in finding that a contract existed between the parties. Colorstone also argues that it was error for the court not to award attorneys fees as, it alleges, Last Chance acted fraudulently. Finally, Colorstone argues that in the absence of a valid contract, all parties should have been returned to their "original position."
While we agree with the trial judge's finding that a valid contract for services existed between the parties, for the foregoing reasons we find that he erred as a matter of law in modifying the terms of the agreement.

FACTS
In May 2005 Last Chance contacted Colorstone soliciting the purchase of debts and delinquent receivables. Colorstone forwarded a copy of an invoice on an outstanding account, David Dean Marble & Granite. The invoice, dated May 26, 2005, reflected the amount due from David Dean to Last Chance. Thereafter, on May 31, 2005, Newton & Associates, a subsidiary of Last Chance, sent a letter to Colorstone stating that it started collection on the account at a 40% interest rate.[1] On June 23, 2005 Colorstone responded to the May 31 correspondence by instructing Last *711 Chance to cease all collection attempts on the account. On July 6, 2005, Newton & Associates sent Colorstone a check in the amount of $18,000 attached to an invoice showing the $30,000 collection minus the 40% collection fee. Newton sent this invoice to the attention of Liu Jin. In a July 12, 2005 letter Colorstone argued that appellant began collection on the account without specific contractual authority to do so. This letter came from the same Colorstone representative, Liu Jin. On July 19, 2005 Newton & Associates sent Colorstone another invoice and check, this one in the amount of $11,774.00, likewise reflecting the amount collected minus the 40% collection fee. On July 25, 2005, Colorstone sent another letter to Newton asking for the remainder of the balance collected, arguing that the services rendered where not authorized. This letter came from Dora Liu, the "Controller" for Colorstone. Soon thereafter, counsel for Colorstone sent Newton a demand letter, requesting the return of the balance on the collected account. When Newton & Associates refused to return the funds, Colorstone filed suit. Newton and Last Chance maintain that at all times they acted with the consent and authority of Colorstone in effecting collections on the unpaid account in question and that they are entitled to have the agreed upon contractual terms enforced.
These parties have a history of doing business together. David Liu, Colorstone's CEO, testified on behalf of Colorstone as to the nature of his business and who handled accounting for Colorstone. On direct examination, Mr. Liu admitted that his employee, Liu Jin worked as an account manager and was involved in "all details" of accounts, collections, and accounts receivable. Prior to the activities on the account which forms the subject of this litigation, Colorstone engaged the services of Last Chance, who purchased two outstanding Colorstone accounts. Within a few days of doing so, Newton, the parent company of Last Chance, solicited business from Colorstone and claims to have received a request to collect funds on an unpaid account. David Liu testified that the account information forwarded on the delinquent account was intended only to support a bid from defendant, not specifically to authorize any collection efforts. However, Mr. Liu testified that during the negotiations, he did not have any direct contact with Newton. Specifically, Liu testified that Liu Jin was the person who wrote the letters to Newton, who received the letters from Newton, and who signed the documents related to this account. During his testimony, David Liu argued strongly that he made all of the business decisions for his company. However, when specifically asked whether his account manager, Liu Jin had authority to act on behalf of the company, he said that she did.
Q. The dealings that Liu Jin undertook for Colorstone were they authorized by you?
R. Yes.
Q. The letters that you just discussed that were sent from Color Stone to Newton & Associates, did you authorize those letters to go out?
R. Yes.
While Mr. Liu testified that he gave his account manager instructions, he also admitted that she was responsible for all negotiations with Newton with respect to the Dean account and the two previous accounts purchased by Newton's subsidiary. Mr. Liu never dealt with Newton regarding the Dean account until after collection was complete.

Standard of Review
This Court must first address whether the trial judge was correct when *712 he found the existence of a contract. The determination of the existence of a contract is a finding of fact, not to be disturbed unless clearly wrong. Crowe v. Homesplus Manufactured Housing, Inc., 38,382 (La.App. 2d Cir.6/21/04), 877 So.2d 156. An appeals court may not set aside a trial court's ruling as to the existence or non-existence of a contract in the absence of manifest error. Southern Treats v. Titan Properties, LLC, 40,873 (La.App. 2 Cir. 4/19/06), 927 So.2d 677, 683. For the reasons set forth below, we find that the trial court did not manifestly err in finding that a contract existed between the parties.

Assignments of Error
Appellant assigns as error the trial judge's modification of the services agreement between the parties, after his finding that an agreement in fact existed. Regarding the trial judge's interpretation of the object of the agreement between Colorstone and Newton, it is clear that the court misinterpreted the basic principles of Louisiana contract law. La.C.C. art. 1906 states that a contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished. A contract is formed by consent of the parties established through offer and acceptance. Id. Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances clearly indicates consent. La.C.C. art. 1927. When the terms of the agreement are clear and do not lead to absurd consequences, the Court cannot look beyond the contract language. La.C.C. art. 2046. A court is not to be concerned with the wisdom or folly of a contract. Bonomo Builders, Inc. v. Aztec Paving & Heavy Construction Company, 38,236 (La.App. 2 Cir. 3/3/04), 867 So.2d 935. Its duty is confined to the ascertainment of the limits of the rights and obligations of the contracting parties as they have defined for themselves. Id., citing, Woolf & Magee v. Hughes, 95-863 (La. App. 3 Cir. 12/6/95), 666 So.2d 1128, writ denied, 96-0073 (La.3/15/96), 669 So.2d 427. A court cannot undermine a contract simply because it was a bad deal for one of the parties. Id., citing, Billingsley v. Bach Energy Corp., 588 So.2d 786 (La. App. 2d Cir.1991).
In his reasons for judgment the trial judge found that an agreement for collection services existed between the parties. Newton offered its collection services in the form of its May 23, 2005 letter. Colorstone accepted when Liu Jin sent Newton the invoice representing the outstanding balance on the David Dean account. Newton collected the outstanding balance in consideration of the 40% collection fee.
Having found no inherent illegality in these terms and conditions that would nullify the agreement, the judge should have enforced the services contract for the agreed upon 40% collection charge. Instead, the trial judge reduced the charge to 25%. However, this reduction was not based on any facts or evidence, other than the trial judge's nebulous assertion that "two to three days" to collect a debt was not enough work to warrant a 40% fee to the collection agency. This finding contradicts the principles governing agreements between parties. The court's duty was limited to determining each party's rights and obligations under the agreement. La. C.C. art. 1906. The trial court went beyond the scope of what was expected when it modified the parties right's pursuant to their agreement. La.C.C. art 2046. Thus, while this Court agrees with the finding that a valid contract existed between the parties, we reverse the trial court and *713 enforce the agreement for the agreed upon 40% collection charge.
In its answer to the appeal, Colorstone asserts several errors. First, appellee argues that no contract existed between the parties because Colorstone never consented to the debt collection agreement. There are four elements necessary for a valid contract: capacity, consent, object, and lawful cause. J. Caldarera & Company, Inc. v. Louisiana Stadium & Exposition District, 99-787 (La.App. 5 Cir. 12/15/99), 750 So.2d 284. Colorstone's argument is based on the absence of consent. Essentially, Colorstone argues that since its office manager, Liu Jin did not have express authority to bind Colorstone in an agreement for collection services with the appellant, the contract is therefore invalid because of the absence of consent.
In considering this argument, we must consider the laws of agency. An agent is one who acts for or in the place of another by authority from the latter. Barrilleaux v. Franklin Foundation Hospital, 96-0343 (La.App. 1 Cir. 11/8/96), 683 So.2d 348, 353-54. An agency relationship may be either express or by implied appointment arising from apparent authority. Id. Therefore, an agent's authority is composed of his actual authority, express or implied, together with the apparent authority which the principal has vested in him by his conduct. Id. Thus, a principal is bound by the acts of his agent. La.C.C. art. 3021.
A principal may also be bound by acts of a professed agent acting with "apparent authority." Tedesco v. Gentry Development, Inc., 540 So.2d 960 (La.1989). As explained by the Supreme Court in Tedesco:
Apparent authority is a doctrine by which an agent is empowered to bind his principal in a transaction with a third person when the principal has made a manifestation to the third person, or to the community of which the third person is a member, that the agent is authorized to engage in the particular transaction, although the principal has not actually delegated his authority to the agent. Restatement (Second) of Agency § 8 (1958); W. Seavey, Law of Agency § 84 (4th ed.1952); Comment, Agency Power in Louisiana, 40 Tul.L.Rev. 110 (1965). In an actual authority situation the principal makes the manifestation first to the agent; in an apparent authority situation the principal makes this manifestation to a third person. However, the third person has the same rights in relation to the principal under either actual or apparent authority. Further, apparent authority operates only when it is reasonable for the third person to believe the agent is authorized and the third person actually believes this. Restatement, supra § 8, comments a and c. There is no express codal or statutory authority for the doctrine of apparent authority in Louisiana. This doctrine of unprivileged agency power, however, is an important part of the modern law of agency. A. Yiannopoulos, Civil Law in the Modern World.

In addition to authority, the court must determine whether the agent gave her consent to bind the principal. Consent may be express or implied, and a trial judge may ascertain from the facts and circumstances of the case whether or not the parties' consent is to be implied. Knecht v. Board of Trustees for State Colleges and Universities and Northwestern State University, 591 So.2d 690 (La.1991). In doing so, the trial court may consider the manner in which the intent was evinced by the parties, "or by one with the *714 express or implied assent of the other." Knecht, supra, at 694.
David Liu, CEO of Colorstone, testified that all "negotiations" between the parties were conducted by Colorstone's accounting manager, Liu Jin. Clark Pellegrin, the general manager of Last Chance, testified that he never dealt with David Liu, instead he stated that all correspondence regarding Colorstone accounts came from Ms. Jin. In addition to correspondence, Mr. Pellegrin testified that Ms. Jin had several phone conversations with him regarding collections. Pursuant to those conversations, Pellegrin testified that Ms. Liu, acting on behalf of Colorstone, negotiated a 40% collection rate, as opposed to the typical 50% for an account as old as the Dean account. In fact, David Liu testified under direct examination that Liu Jin had the authority to bind Colorstone. She acted as the agent in selling Last Chance two outstanding accounts earlier in May 2005. Colorstone presented no evidence to support its contention that she no longer had that authority as to the David Dean account. It should also be noted that Colorstone did not call Liu Jin to testify at trial, and the only evidence offered to support Colorstone's contention that there was no consent by Liu to enter into a contract were the letters sent by Dora Liu and David Liu to Newton after collection on the account was nearly complete. Additionally, Newton sent correspondence to Colorstone at the end of May 2005 stating that the David Dean account had been placed for collection. Colorstone waited until June 23, 2005 to mail, not fax, its demand that Newton stop collection on the account. We find this lack of urgency instructive. Had there simply been a misunderstanding as to the terms of the agreement, presumably Colorstone would have acted immediately in response to Newton's letter at the end of May. The fact that Colorstone waited nearly one month to respond to Newton's letter setting forth the terms and conditions of the agreement for services undermines the credibility of its assertion that there was no agreement based on Liu Jin's lack of authority.
Thus, we agree with the trial court's determination that Liu Jin had apparent authority to act on behalf of this corporation. Her consent to bind Colorstone was sufficient to satisfy the requirements for a valid agreement. This assignment of error is without merit.
In its next assignment of error, Colorstone asserts that the appellant committed fraud by deceptively collecting on the account despite being told not to do so, and by refusing to respond to the cease and desist letters. In order to prove fraud, the party making the allegation must prove that intent to defraud exists and that the defrauding party deliberately seeks to gain an unjust advantage or to cause loss or inconvenience to the other. La. C.C. art. 1953. Colorstone argues that appellant "fraudulently]" obtained account information from Colorstone on the outstanding account evidencing appellant's clear intent to deceive. Colorstone also argues that appellant's failure to respond to repeated requests to stop collection efforts constitutes the deliberate act of seeking an advantage over appellee.
These assertions, however, are contrary to the facts presented at trial. First, Colorstone provided appellant with all of the pertinent information on the delinquent account via its May 31, 2005 correspondence. There was no testimony that this information was stolen or acquired via some illegal or fraudulent means.
While Colorstone alleges that appellant continued in the commission of the fraud by deliberately ignoring correspondence to stop collection, the evidence adduced at *715 trial showed that collection was complete three days prior to the first letter from Colorstone to appellant telling them to stop collection. None of the testimony presented at trial suggests that appellant knew of Colorstone's desire for appellant to cease and desist, yet continued to collect despite Colorstone's wishes. There is no evidence to support Colorstone's fraud claim. This assignment of error is without merit.
Colorstone's third assignment of error is that because no agreement existed, any monies recovered on their behalf should be returned. This Court has already addressed this argument earlier in this discussion. We found that a valid agreement did exist for collection services to be performed. Since there are no vices of consent which would act to nullify that agreement, it is to be enforced as agreed upon: appellant to receive 40% of the amount collected in return for services rendered.
In its final assignment, appellee alleges that the trial court abused its discretion when it admitted evidence, subject to a motion to compel discovery, which was never produced. The trial judge, however, is granted broad discretion in determining the admissibility of evidence. Abadie v. Metropolitan Life Ins. Co., 00-344 (La.App. 5 Cir. 3/28/01), 784 So.2d 46. Furthermore, courts are to resolve the admissibility of evidence in favor of receiving the evidence. Id., at 74, citing, Dardeau v. Ardoin, 97-144 (La.App. 3 Cir. 11/5/97), 703 So.2d 695, 697. Trial courts have the right and power to conduct proceedings so that "justice is done." La. C.C.P. art. 1631. This includes the admissibility of a witness' testimony. Pino v. Gauthier, 633 So.2d 638 (La.App. 1 Cir. 1993); see also, Bush v. Winn-Dixie of Louisiana, Inc., 573 So.2d 508 (La.App. 4 Cir.1990).
Colorstone specifically complains about the introduction of previously undisclosed telephone records as well as the testimony of a witness despite the fact that his name was not included on the witness list. No evidence was produced to suggest that the admission of either the telephone records or the witness's testimony was so prejudicial as to jeopardize Colorstone's position. La.C.C.P. art. 1631. The trial judge did not abuse his discretion in admitting this evidence. Accordingly, this assignment is without merit.

CONCLUSION
For the foregoing reasons, this Court finds that the trial court committed legal error when it modified a legal agreement for collection services. The contract should be enforced for the agreed upon 40%. This Court further finds no merit in any of the errors assigned by Colorstone in its answer to the appeal. Specifically, Colorstone's agent acted with authority and gave her consent when she engaged the collection services of the appellant. Furthermore, Colorstone failed to prove the existence of any fraud in the collection actions employed by the appellant. To the contrary, the evidence presented indicates the collection was conducted swiftly and effectively and in accordance with the parties' agreed upon terms. Because a valid agreement existed between the parties, Colorstone is not entitled to a return of the 40% services fee charged by the appellant for collection. Finally, the trial court did not abuse its broad discretion in admitting telephone records and witness testimony despite the timely objection of Colorstone.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] Testimony from Appellant's representative, Mr. Pellegrin, described Last Chance as a subsidiary of Newton & Associates, with Last Chance dealing exclusively in the purchase of outstanding debts, while Newton & Associates handles only debt collection.