SUSAN M. CHEHARDY, Judge.
| sjThis suit arises from a contract involving construction of a home. The defendants, Robert Sutherland and Jeanne Sutherland, appeal the trial court’s judgment against them that awarded damages to the contractor. We affirm.
FACTS
On November 18, 2004, the Sutherlands signed a document titled “Coffman Homes, LLC Builder’s Contract,” which provided that Coffman Homes, LLC (“Coffman”) would construct a house for the Suther-lands on Square B, Lot 51A in Southlake Village Subdivision in Kenner. The agreement designated the Sutherlands as Owner and Coffman as Contractor and states as follows, in pertinent part:
Contractor and Owner, for the consideration hereinafter named, agree and bind and obligate themselves as follows:
(Project to start in 30-90 days)
Contractor’s Obligations:
The Contractor agrees to, obtain all subcontractors, to do and perform or have performed all the work, and to erect, build finish and deliver in a workmanlike manner a single or two story, single family residence, with one year warranty as shown on the drawings and described in the specifications prepared or to be prepared by Owner’s architect, _and to be dated and signed by the parties hereto on the date of submission to the Contractor, which said drawings and specifications are |3by reference made a part thereof, and, together with this agreement, form the contract.
* * *
The said building to be erected on the following described property, which either currently belongs to the Owner, or shall be obtained by Owner, viz:

Southlake Village Subdivision Kenner, LA

Square B Lot 51A 81.25/75x9543/120

The contract also contained the following cancellation clause:
Should the Owner cancel this contract, at any time and for any reason, Owner hereby agrees and stipulates that liquidated damages to the Contractor in the amount of $20,000.00 shall be paid directly to the Contractor as damages for cancellation of this Contract.... Should Contractor be required to enforce the terms of this contract through the institution of legal proceedings, Owner hereby agrees to pay all of Contractor’s legal *55 costs and attorney’s fees in the amount of 25% of the total amount due under the Contract.
After they signed the agreement with Coffman, the Sutherlands purchased the designated lot. Thereafter they met with an architect on several occasions in an attempt to have plans drafted for construction of the house. The Sutherlands were not satisfied with any of the proposed house plans, because those that had all the features they desired would not fit on their lot due to the lot’s odd shape. Eventually the Sutherlands informed Coffman they were not going to build a house on the lot.
Coffman filed suit against the Suther-lands on June 1, 2006, alleging the Suther-lands had breached the contract to build the house. Coffman sought the contractual stipulated damages of $20,000 plus attorney’s fees.[1]
The Sutherlands answered the petition with a general denial.[2] The matter proceeded to trial, and the trial court rendered judgment in favor of Coffman in the amount of $20,000 plus costs and attorney’s fees.
l4In reasons for judgment incorporated into the judgment, the trial court held as follows:
This is a suit for liquidated damages for the non-performance of a conditional contract, containing suspensive conditions .... The primary issue ... is whether the Sutherlands breached the contract by refusing to commence construction on the subject lot or whether the suspensive conditions contained within the contract rendered the contract null and void.
It is uncontested that there existed a condition in the contract which required “drawings and specifications” be prepared or procured by the “owners” and then submitted to the contractor. It is this suspensive condition which the Court addresses and upon which the issues before this Court depend. Although other conditions exist within the contract, the fulfillment or non-fulfillment of the owners[’] obligation to submit plans supercedes all other conditions which are not before this Court this date and are inconsequential at this point in time.
Defendants entered into the subject contract with Coffmann [sic] apparently as [a] purchase requirement and/or a condition of the Subdivision within which the lot was located.
Testimony of defendants revealed that plans were drawn and reviewed with Coffman and it was then they first interjected a desire to place a pool in the yard. The pool was not contemplated initially nor was it made a condition of the contract subsequently. The plans were never signed and dated. The contract could not be fulfilled and failed.
Defendants also argue that there was no meeting of the minds nor price certain negotiated between the parties. The Court disagrees. It is clear that the intention of both parties was that Coffman was to build defendants’ house on the designated lot and that a “cost-plus” price was the agreed price certain.
While La. Civ.Code Article 1770 states that an obligation is null and void when dependent upon the will of the obligor, as argued by the Sutherlands, the obli *56 gations in the contract at hand are not based solely on whim but are clearly conditions that defendants were in control of bringing about or not. Accordingly, La. Civ.Code Art. 1772 must be considered:
|r/4 condition is regarded as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to fulfillment.
Testimony and evidence revealed that defendants clearly had interests contrary to fulfillment of the contract. Defendants wanted a pool[,] which they testified would not fit to their satisfaction on the lot; and, consequently, they wanted to sell the lot, and have done so.
Finally, the court found no merit to the defendants’ argument that the contract’s $20,000 in liquidated damages was excessive and against public policy. The court noted there was no testimony of discussion or objection to the stated damages prior to the institution of this suit. The court found that the stipulated amount “conservatively approximates lost profit of Coff-man” due to the failure of the contract and that the amount is reasonable.
The Sutherlands filed a motion for new trial, which was denied, and now they appeal.
LAW AND ANALYSIS
We address the assignments of error in the order in which they are raised in the Sutherlands’ brief.

I. Validity and Enforceability of Contract

In their first assignment, the Suth-erlands argue the trial court erred in concluding there was a valid, completed, and enforceable contract between the parties, because there was no meeting of the minds as to the object of the contract and no agreement as to the price. They assert the document expressly contemplates future agreements being entered into between the parties prior to an enforceable contract coming into existence.
There are four elements necessary for a valid contract: capacity, consent, object, and lawful cause. Color Stone Intern., Inc. v. Last Chance CDP, LLC, 08-35,6 p. 8 (La.App. 5 Cir. 5/27/08), 986 So.2d 707, 713. “In other words, the parties must have the capacity to contract and give their consent freely for a certain object, and the contract must have a lawful purpose. Both parties must be bound in order for there to be a contract.” J. Caldarera & Company, Inc. v. Louisiana Stadium & Exposition District, 99-787, p. 6 (La.App. 5 Cir. 12/15/99), 750 So.2d 284, 288.
The determination of the existence of a contract is a finding of fact, not to be disturbed unless clearly wrong. Color Stone Intern., Inc., 08-35 at p. 5, 986 So.2d at 712. An appeals court may not set aside a trial court’s ruling as to the existence or non-existence of a contract in the absence of manifest error. Id.
The Sutherlands contend the contract was to consist of the agreement at issue together with the drawings and specifications of the architect, which were to be signed and dated by the parties. They assert, “According to the plain language of the contract, it was not until both the agreement and the drawings and specifications were signed by the parties that the contract to build was to be formed.”
Further, the Sutherlands cite the contract’s express language that the drawings and specifications “prepared or to be prepared by owner’s architect ... and to be dated and signed by the parties hereto on the date of submission to the Contractor ... by reference made a part thereof, and, together with this agreement, form the *57 contract.” The Sutherlands argue that any ambiguity should be construed against Coffman, since Coffman drafted the contract.
They assert the contract did not have a certain object, because before any construction could commence, architectural plans and drawings had to be submitted, as well as approved and signed by the parties. Further, the itemized cost of construction was to be calculated by Coffman after receipt of the plans, and agreed to and signed off on by the parties. The Sutherlands contend that in order 17for the contract to have a certain object, the plans and specifications had to become part of the contract through being approved and signed by the parties.
In opposition, Coffman argues that taken to its logical conclusion, the Suther-lands’ argument would nullify any contract between a contractor and an owner if at any time during the building, the plans were ever modified, adjusted or changed by the owner, as often occurs during construction of a building.
We agree with Coffman. The contract clearly sets forth the object of the contract: Coffman was to build a single-family residence with a one-year warranty, as shown on plans to be obtained. Under the contract, the exact specifications for that residence were to be determined by drawings prepared by the owner’s architect. The fact that there were no drawings or specifications submitted at the time the agreement was confected is specifically contemplated in the agreement: “specifications prepared or to be prepared by Owner’s Architect.” That provision does not make the object of the contract uncertain. The object of the contract was determinable and susceptible of being made definite by timely action, so there is no ground to declare the agreement a nullity.
Accordingly, the trial court did not err in finding that “the intention of both parties was that Coffman was to build defendants’ house on the designated lot and that a ‘cost-plus’ price was the agreed price certain.”

II. Fulfillment of Suspensive Condition

Alternatively, if the contract is found to be valid, the Sutherlands argue the trial court erred in failing to conclude that the contract contained a suspensive condition that was not fulfilled through no fault of the Sutherlands, so that the contract is unenforceable based on the failure of the condition.
“A conditional obligation is one dependent on an uncertain event. If the obligation may not be enforced until the uncertain event occurs, the condition is 18suspensive. If the obligation may be immediately enforced but will come to an end when the uncertain event occurs, the condition is resolutory.” La. C.C. art. 1767. “A suspensive condition that depends solely on the whim of the obligor makes the obligation null. A resolutory condition that depends solely on the will of the obli-gor must be fulfilled in good faith.” La. C.C. art. 1770. “A condition is regarded as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment.” La. C.C. art. 1772.
“When the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose.” La. C.C. art. 2054.
The Sutherlands contend they acted in good faith by choosing the lot they purchased and hiring an architect to draw plans. They assert that their right to *58 choose the specifications of the home to be built is implicit in the contract. They argue the trial court’s judgment presupposes that just because the suspensive condition was within the Sutherlands’ control, it was not fulfilled because of their fault.
The Sutherlands state the trial court’s ruling would require them to choose unacceptable house plans. They point out the record shows they made repeated attempts to obtain architectural plans to suit them. They contend that without an allegation of bad faith or facts to support such a finding, their failure to find acceptable architectural plans cannot result in liability under La. C.C. art. 1772.
In opposition, Coffman argues the Suth-erlands distort the issue by casting their obligation to deliver the plans as a suspen-sive condition to the contract itself. Instead, Coffman asserts, Coffman’s performance under the contract was ^conditioned on the Sutherlands’ production of the plans, because Coffman could not perform its obligation to build the Sutherlands’ home without them.
We agree with Coffman. To hold otherwise would enable any property owner to cancel any construction contract that obligates the owner to provide plans by simply refusing to provide them, or to provide non-conforming plans, leaving the contractor with a writing signed by both parties that is legally meaningless. The Suther-lands cannot, by their own actions, transform their own obligation into a condition that cancels the obligation itself. Their obligation to provide the plans to Coffman is not a condition to the Sutherlands’ own performance, but rather to Coffman’s performance.
The fact that the Sutherlands wanted a “dream home” with features that could not fit on the lot they had purchased does not invalidate the contract. There was no provision in the contract that the plans and specifications had to fit the Sutherlands’ idea of a “dream home” before the contract would be effective. As the trial court pointed out, the Sutherlands “clearly had interests contrary to fulfillment of the contract,” because they wanted a pool that would not fit to their satisfaction on the lot they had chosen. Hence, the Sutherlands wanted to sell the lot rather than build on it.
Accordingly, we find no merit to this assignment.

III. Error as Vice of Consent

Alternatively, if a valid, completed, and enforceable contract is found to exist between the parties, the Sutherlands contend the trial court erred in failing to rescind the contract based on a vice of consent, error.
“Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party.” La. C.C. art. 1949. “A party who obtains | ^rescission on grounds of his own error is liable for the loss thereby sustained by the other party unless the latter knew or should have known of the error.” La. C.C. art. 1952.
The Sutherlands contend the principal cause of their entering into the agreement with Coffman was “for the construction of a personal residence according to their specifications.” They argue, “This cause was known to [Coffman] by virtue of the nature of the agreement and its terms.”
As the trial court pointed out, the pool the Sutherlands wanted “was not contemplated initially nor was it made a condition of the contract subsequently.”
The Sutherlands assert the law does not require the level of specificity required by the trial court: “It is sufficient that Appel- *59 lee knew that the ‘agreement’ was entered into with the understanding that Appellants would have the right to choose the specifications of the house to be built.” The Sutherlands contend the agreement gives them the right to build the house they wanted, which was not possible on the lot they purchased. Hence, they argue, their consent was vitiated.
In opposition, Coffman states there is no error in the contract itself, nor in the parties’ understanding of their intentions: “It was understood by all that a single-family residence would be constructed on the lot chosen and designated in the contract by the Sutherlands.” Hence, there was no error that would make the contract null.
We agree. To take the Sutherlands’ argument to its logical extreme would mean that if they had wanted to reproduce the Sistine Chapel on their lot, the impossibility of fitting such a building on the Sutherlands’ lot would allow the Suther-lands to nullify the contract. Any “defect” present here was created entirely by the Sutherlands and was entirely within their control to cure. There is no merit to this assignment of error.

\UIV. Stipulated Damages

The appellants argue that even if there was a valid, enforceable contract between the parties, the trial court erred in failing to find the stipulated damages clause in the contract was unconscionable and therefore unenforceable.
“Stipulated damages may not be modified by the court unless they are so manifestly unreasonable as to be contrary to public policy.” La. C.C. art. 2012.
The Sutherlands rely on La. C.C. art. 2008, which states, “An obligor whose failure to perform the principal obligation is justified by a valid excuse is also relieved of liability for stipulated damages.” The Sutherlands point out that Coffman incurred no actual damages, but rather the amount stipulated in the contract is an arbitrary number that Coffman places in all its contracts. They argue that if the agreement is enforceable, then the stipulated damages should be reduced to a nominal amount because Coffman incurred no actual damages.
In opposition, Coffman cites La. C.C. art. 1986, which provides, “Upon an obli-gor’s failure to perform an obligation to deliver a thing, or not to do an act, or to execute an instrument, the court shall grant specific performance plus damages for delay if the obligee so demands. If specific performance is impracticable, the court may allow damages to the obligee.”
We note, as did the trial court, that there was no testimony, discussion, or objection to the stated damages prior to the institution of the lawsuit. Further, the Sutherlands agreed to the stipulated contractual damages, but disagreed as to when that damage clause would take effect.
“Damages are measured by the loss sustained by the obligee and the profit of which he has been deprived.” La. C.C. art. 1995.
The contract clearly states that Coff-man’s profit would be 15% of the total labor and costs to build. Coffman testified that homes in the subdivision were 112valued from $400,000 to $650,000. The Sutherlands provided no countervailing evidence to that testimony. A 15% profit on $400,000 would yield Coffman three times the stipulated amount of $20,000. Accordingly, the trial court did not err in finding that the amount of the stipulated damages “conservatively approximates” Coffman’s lost profit. We find no merit to this assignment of error.
*60 DECREE
For the foregoing reasons, the judgment is affirmed. Costs of this appeal are assessed against the appellants.

AFFIRMED.

. After the suit was filed, but before it went to trial, the Sutherlands sold the lot to a third party.

. In their answer the Sutherlands also made exceptions of prematurity and no cause of action. The record does not indicate any rulings on the exceptions, but no issues concerning the exceptions are raised on appeal.