978 So.2d 403 (2007)
Christopher TERITO
v.
WALL-VAUGHN MOTORS, INC.
No. 2007 CA 0627.
Court of Appeal of Louisiana, First Circuit.
December 21, 2007.
Peter T. Dudley, Baton Rouge, LA, for Plaintiff-Appellee, Christopher Terito.
Karl J. Koch, Baton Rouge, LA, for Defendant-Appellant, Wall-Vaughn Motors, Inc.
Before WHIPPLE, GUIDRY, and HUGHES, JJ.
GUIDRY, J.
An employer appeals a judgment awarding a former employee a sum of *404 money for work performed during the time the employee was absent from work to have back surgery performed. Having reviewed the law and evidence governing this matter, we reverse.

FACTS AND PROCEDURAL HISTORY
In January 2004, Wall-Vaughn Motors, Inc. began operating a car dealership in Hammond, Louisiana called Hammond Suzuki. Christopher Terito was hired as the finance and insurance manager for the dealership. Shortly after commencing work with the company, Terito disclosed that he needed back surgery. On April 26, 2004, the surgery was performed.[1] In June 2004, Terito returned to work, but after a couple of days resigned from his position. Following his resignation, Terito made demand on Wall-Vaughn Motors, Inc. for $3,100.00 in unpaid wages allegedly "agreed to be paid by [Wall-Vaughn Motors, Inc.] for the services [Terito] performed on behalf of Wall-Vaughn Motors, Inc., during the [months] of May 2004 and June 2004." Wall-Vaughn Motors, Inc. denied owing Terito any unpaid wages.
On January 20, 2005, Terito filed a petition for damages against Wall-Vaughn Motors, Inc. seeking $3,100.00 in wages and further seeking penalty wages and attorney fees pursuant to La. R.S. 23:631 and 632. Wall-Vaughn Motors, Inc. answered the petition denying the alleged debt, and the matter went to trial. Following the trial on the merits, the trial court rendered judgment in favor of Terito awarding him the sum of $880.00 for work performed by him while he was absent from work. Wall-Vaughn Motors, Inc. appeals the judgment, asserting that the trial court erred in rendering judgment in favor of Terito because there was no evidence introduced proving that a person with authority to bind the company obligated the company to pay Terito.

DISCUSSION
A mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal. La. C.C. art. 2989. The question of mandate/agency is basically a factual determination.[2] The essential test to determine whether implied agency exists is whether the principal has the right to control the conduct of the agent and whether the agent has the right and authority to represent or bind the principal. Lewis v. Succession of Johnson, 05-1192, p. 16 (La.4/4/06), 925 So.2d 1172, 1182.
In Barrilleaux v. Franklin Foundation Hospital, 96-0343, pp. 6-7 (La.App. 1st Cir.11/8/96), 683 So.2d 348, 354, writ denied, 96-2885 (La. 1/24/97), 686 So.2d 864 (citations omitted) (emphasis added), this court succinctly presented the principles governing a determination of apparent agency:
Apparent agency arises when the principal has acted so as to give an innocent third party a reasonable belief that the agent had the authority to act for the principal, and the third party reasonably relies on the manifested authority of the *405 agent. Apparent agency is established by the words and conduct of the parties and the circumstances of the case. An agency relationship may be created even though there is no intent to do so.
An agency relationship is never presumed; it must be clearly established. The burden of proving apparent authority is on the party seeking to bind the principal. A third party may not blindly rely on the assertions of an agent, but has a duty to determine, at his peril, whether the agency purportedly granted by the principal permits the proposed act by the agent. One must look from the viewpoint of the third party to determine whether an apparent agency has been created.
At trial, Terito testified that prior to having back surgery, he asked Michael D. Vaughn, the dealer principal and part owner of Wall-Vaughn Motors, Inc., if there was any work he could do from home, and Vaughn told him that he could not work from home and that the company would not pay him while he was absent from work for his surgery. Despite Vaughn's denial of Terito's request to work from home, Terito testified that "[m]y understanding was that once I started being contacted from work, I talked to my boss;[3] and I was explained (sic) that I would be taken care of, and that my insurance would be taken care of while I was out." Terito testified that he understood that being "taken care of meant that he would receive $2,400.00, plus insurance, based on a subsequent conversation with the dealership comptroller/accountant; yet he acknowledged that both his boss and the comptroller/accountant worked under Vaughn.
Vaughn likewise testified that he told Terito that he would not be paid while absent from work for back surgery. Vaughn testified that at the dealership, only he and Garry Lewis, the senior partner and the majority owner of the dealership, had authority to decide whether Terito would be paid during his absence. He explained that when Terito was hired, he allowed Kemp to make the decision to hire him;[4] however, Vaughn said that while Kemp negotiated directly with Terito about Terito's salary, he, Vaughn, actually made the final decision about what salary to offer Terito. As Vaughn stated, Kemp simply "delivered the message."
As for the circumstances surrounding the work performed by Terito while absent from the dealership for his back surgery, Vaughn stated that he knew that salespeople from the dealership were contacting Terito at home following his surgery to see how Terito was doing, but he said he did not know they were talking to him about business deals. As Vaughn explained, "I was paying Jeff to handle that job, and I assumed it was being taken care *406 of."[5] Moreover, a medical excuse entitled "Work Status Report" was introduced into evidence in which it is noted that Terito was "unable to work pending treatment" and that he could perform "zero" work until he was released from surgery.
Based on this evidence, we find the trial court erred in awarding Terito compensation for the work he performed while he was absent from work for his back surgery. Vaughn, the owner and principal authority at the dealership, expressly informed Terito that he could neither work nor be compensated while he was absent from work for his back surgery. Although the actions of Terito's immediate supervisor and co-workers (i.e., requesting Terito to perform some employment duties and assuring him that he would be compensated) were contrary to the express declaration of Vaughn, there was no evidence presented to show that any of those persons had authority to countermand Vaughn's prior directive. Thus, the trial court erred in awarding Terito compensation for the work performed under such circumstances.

CONCLUSION
Based on the foregoing discussion, we reverse the judgment of the trial court. All costs of this appeal are cast to the appellee, Christopher Terito.
REVERSED.
WHIPPLE, J., concurs, for reasons assigned.
WHIPPLE, J., concurring.
In the instant case, the trial court undisputedly found that Terito had performed some work from home while absent from the dealership for his back surgery. Nonetheless, Vaughn testified, and Terito acknowledged, that Vaughn had informed him that the company would not pay him while he was absent from work. In my view, given the absence of any testimony from the employees who allegedly told Terito that he would be compensated, I must agree with the majority's ultimate conclusion that Terito failed to satisfy his burden of proof.
NOTES
[1] Although a medical excuse introduced into evidence and marked as "D-1" states that Terito's surgery was "scheduled for 5-26-04," the number "5" clearly appears to have been superimposed over the number "4" in the date, and based on other evidence, including Terito's testimony, it was established that the surgery was performed on April 26, 2004.
[2] On appeal, a trial court's determination as to whether an apparent agency exists should not be reversed absent a finding of manifest error; however, it is clear from the trial court's reasons for judgment that its decision was not premised on a finding of apparent agency, which it expressly found had not been established.
[3] Terito considered the general manager for the dealership at that time, Brett Kemp, to be his "boss," and he was the person to whom Terito spoke. Terito further stated that he told Kemp "that I was being called and that I expected if I was going to have to work from my house and take care of my officeI expected to be paid. And he informed me that it would be handled and worked out, and that I would be compensated for doing my job because L.D.S. could not get a temporary to replace me while I was out of work."
[4] Specifically, Vaughn explained "I let [Kemp] pick who he wanted as an F & I person, because I knew they would be married and coupled closely together. There was (sic) two guys he was looking at. He bounced both of them off of me asked me what I thought, which one did I want him to pick, which one did I want to pick. And I said well, [Kemp], I'm going to let you decide which F & I person you want to hire[.]"
[5] Vaughn had previously testified on direct examination that he had Jeff Tambrino, "one of our better salespeople" from St. Louis, fill Terito's place as finance and insurance manager.