STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2018 CA 1545

THERESA MCCRAY AND DENISE M. WILLIAMS, INDIVIDUALLY
AND AS THE CO-ADMINISTRATRIXES OF THE SUCCESSION OF
JOHNNY MCCRAY, SR., CARLENE JOYCE MCCRAY WOODEN,
SOPHIA MCCRAY, OENA MCCRAY, MARVA MCCRAY GORDON,
MEATHA MCCRAY WINBUSH, MARLIES MCCRAY MITCHELL,
MARVIN MCCRAY, JR., GLORIA MCCRAY, DR. JAMES MCCRAY, JR.,
AND RUBY MCCRAY

VERSUS

SOUTHERN AGGREGATES, LLC, DELAWARE, WARREN MCCRAY,
JOHNNY MCCRAY, JR. AND KEVIN P. BLACK

*Judgment Rendered:* AUG 2 9 2019

* * * * * * * *

Appealed from the
21st Judicial District Court
In and for the Parish of St. Helena
State of Louisiana
Case No. 22654

The Honorable Jeffrey S. Johnson, Judge Presiding

* * * * * * * *

| | |
|---|---|
| Kenneth L. Blanchard, Jr.<br>Plaquemine, Louisiana | Counsel for Plaintiffs/Appellants<br>Theresa McCray, et al |
| W. Brett Mason<br>Baton Rouge, Louisiana | Counsel for Defendants/Appellees<br>Southern Aggregates, LLC and<br>Kevin P. Black |
| Robert J. Carter<br>Greensburg, Louisiana | Counsel for Defendant/Appellee<br>Warren McCray |

* * * * * * * *

BEFORE: GUIDRY, CRAIN, THERIOT, PENZATO, AND LANIER, JJ.

Crain, J concurs
Penzato, J., concur

**THERIOT, J.**

This appeal arises from a partial summary judgment that dismissed the plaintiffs' claims against two defendants with prejudice. For the reasons set forth herein, we reverse the partial summary judgment.

## FACTS AND PROCEDURAL HISTORY

Theresa McCray, individually and as a co-administratrix of the Estate of Johnny McCray, Sr.; Denise McCray Williams, individually and as a co-administratrix of the Estate of Johnny McCray, Sr.; Carlene Joyce McCray Wooden; Sophia McCray; Oena McCray; Marva McCray Gordon; Meatha McCray Winbush; Marlies McCray Mitchell; Marvin McCray, Jr.; Gloria McCray; Dr. James McCray, Jr.; and Ruby McCray (collectively referred to herein as "Plaintiffs"), are among the co-owners of property located in St. Helena Parish. Plaintiffs filed suit against Southern Aggregates, LLC; Kevin P. Black, Southern Aggregates' vice president and general manager; and Warren McCray and Johnny McCray, Jr., fellow co-owners of the property, seeking damages arising from Warren and Johnny's execution of a Lease and Minerals Option Agreement ("Agreement") with Southern Aggregates and from the subsequent exercise by Southern Aggregates of the rights purportedly granted in the Agreement on the co-owned property. Warren and Johnny executed the Agreement in the capacity of authorized representatives of the rightful owners of the co-owned property, identified in the Agreement simply as "the heirs of Wm. Johnson, deceased." Plaintiffs alleged that Warren and Johnny fraudulently represented to Southern Aggregates and Black that they were authorized to act on behalf of all co-owners of the land and that Southern Aggregates and Black either knew or should have known that the representations were fraudulent and that they did not have a valid lease.[1] Plaintiffs alleged that Southern Aggregates

---

[1] Although Plaintiffs initially made allegations of fraud against all defendants, the allegations of fraud against Southern Aggregates and Black were later stricken from the pleadings pursuant to a consent judgment.

and Black could not have reasonably believed that the lease was valid because they were informed by Warren and Johnny's attorney prior to execution of the Agreement that Warren and Johnny did not have a written mandate to act for the other co-owners and were unsure how many co-owners of the property currently existed.

Southern Aggregates filed a concursus proceeding under La. C.C.P. art. 4651, impleading all co-owners of the property and depositing the total royalties to be paid under the Agreement, in the amount of $19,093.59, into the registry of the court so that the co-owners could assert their respective claims contradictorily against each other. Southern Aggregates also filed a cross claim against Warren and Johnny, seeking defense and indemnification under the Agreement for Plaintiffs' claims.

Southern Aggregates and Black filed a motion for summary judgment on Plaintiffs' claims and on their cross claim against Warren and Johnny. In support of their motion, they filed Black's affidavit; a copy of the Agreement; copies of monthly royalty statements for the co-owned property for June, July, and August 2014; and the trial court's August 28, 2017 concursus order.[2] Black's affidavit set forth the following facts: Black negotiated, as an agent for Southern Aggregates, with Warren and Johnny to obtain exploration and mining rights on property owned by "the William Johnson Estate and/or the Heirs of Wm. Johnson, Deceased;" Warren and Johnny held themselves out as authorized representatives of "the William Johnson Estate and/or the Heirs of Wm. Johnson, Deceased," and expressly warranted that they could act for and on behalf of all landowners; Warren and Johnny represented that they spoke for and had the consent of all of their relatives, and they knew of no other person claiming interest in the property other than the individuals they represented; Southern Aggregates relied on these representations when it entered into the Agreement; and neither Black nor Southern Aggregates knew that

---

[2] The copies of the Agreement and the royalty statements filed in support of the motion for summary judgment were authenticated by Black's affidavit.

Warren and Johnny's representations were untrue, false, or fraudulent, or that they lacked authority to legally bind the landowners.

In opposition to the motion for summary judgment, Plaintiffs filed an in globo exhibit, which consisted of unauthenticated copies of Southern Aggregates' unsworn responses to interrogatories, responses to requests for production of documents, and certain documents referenced therein.[3] Included in this in globo exhibit were emails exchanged during the drafting and negotiation of the Agreement between A. Shelby Easterly, III, counsel for Warren and Johnny; David Rieveschl, presumably counsel for Southern Aggregates; and Black. Plaintiffs urged that these emails created an issue of material fact as to whether Southern Aggregates and Black knew or should have known that Warren and Johnny did not have authority to act on behalf of all co-owners of the property.

In an April 15, 2014 email to Black, Easterly stated:

The attached excerpt from the 1983 partition among the heirs, left 19 remaining as co-owners (though I am sure some of these have passed away leaving more owners). [Warren and Johnny] have acted in the past for all, though they do not have a power of attorney, and divided the moneys among the owners. Will you need signatures from all current owners? (That may take months).

Later, in an April 21, 2014 email requesting revisions to the Agreement, Easterly informed Rieveschl and Black that the Agreement would need to be edited to provide for royalty payments to be made to Warren and Johnny, because "[n]o bank would open an account for Wm Johnson Estate."

---

[3] None of the documents contained in Plaintiffs' in globo exhibit comply with summary judgment procedure. The only documents that may be filed in support of or in opposition to a motion for summary judgment are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966(A)(4). Documents not included in this exclusive list, such as photographs, pictures, video images, or contracts, may not be filed unless they are properly authenticated by an affidavit or deposition to which they are attached. Furthermore, although answers to interrogatories are included in the exclusive list, they may not be filed in support of or in opposition to a motion for summary judgment unless they are answered under oath, as required by La. C.C.P. art. 1458. See La. C.C.P. art. 966, 2015 Revision Comment (c). The responses to requests for production of documents and certain documents (including the emails) attached thereto were not properly authenticated by an affidavit or deposition to which they were attached, and the interrogatories were neither answered under oath nor authenticated by an affidavit or deposition to which they were attached. Nevertheless, Southern Aggregates and Black did not object in their reply memorandum to any of the documents in Plaintiffs' in globo exhibit, as required by La. C.C.P. art. 966(D)(2); therefore, we will consider these documents in conjunction with the motion for summary judgment. See La. C.C.P. art. 966(D)(2) ("The court . . . shall consider any documents to which no objection is made.")

4

A hearing was held on the motion for summary judgment on March 23, 2018, during which Plaintiffs attempted to file additional documents in opposition to the motion for summary judgment. Initially, Plaintiffs' counsel asked to file "the entire record of this matter" in opposition to the motion for summary judgment; then, in response to the objection of counsel for Southern Aggregates and Black, Plaintiffs' counsel sought to file "all of the pleadings of this matter and the exhibits attached thereto" into evidence. Counsel for Southern Aggregates and Black again objected to the filing of evidence at the hearing on the motion for summary judgment in violation of La. C.C.P. art. 966(B)(2), but the trial court allowed the evidence to be admitted over the objection, stating that Southern Aggregates and Black could file a reply memorandum after the hearing in order to address the additional summary judgment evidence. Plaintiffs' counsel also requested for the first time at the hearing that the trial court take judicial notice of "Probate 4129," identified by Plaintiffs' counsel as "the succession of Alce [sic] Morgan, wife of [and] William Johnson," and the trial court agreed to do so. At the conclusion of the hearing, the trial court took the matter under advisement and gave the parties two weeks to file reply memoranda if they wished to do so.

Southern Aggregates and Black filed a supplemental memorandum in support of their motion for summary judgment following the hearing, as instructed by the trial court, and attached the unauthenticated, theretofore-unfiled admissions of Warren and Johnny, which they urged would "shine light on the pending motions."[4] In these documents, Warren and Johnny each admitted that he had authority to enter into the Agreement "from everyone on his side of the family that he represents on the date the Lease was signed;" that Warren and Johnny collectively represent eighty

---

[4] Article 966(B)(3) provides that no additional documents may be filed with a reply memorandum. Although article 966(B) contains an exception to the provisions contained therein for filing, opposing, or replying to a motion for summary judgment where "extended by the court and agreed to by all of the parties," the record contains no indication that the trial court judge ordered that the record would remain open for the filing of additional evidence, nor does it appear that the parties consented to such. As such, we will not consider the documents attached to the supplemental memorandum on our de novo review.

5

percent of the co-owners of the land; that Plaintiffs collectively own less than a twenty percent interest in the land; and that Plaintiffs could not have legally prevented them from signing the Agreement on the date it was executed.

Thereafter, the trial court granted Southern Aggregates' and Black's motion for summary judgment on July 25, 2018, dismissing all of Plaintiffs' claims against Southern Aggregates and Black with prejudice.[5] This appeal by Plaintiffs followed.

## DISCUSSION

Appellate courts review summary judgments *de novo* using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Red Star Consultants, LLC v. Ferrara Fire Apparatus, Inc.*, 2017-0847, p. 4 (La.App. 1 Cir. 2/8/18), 242 So.3d 608, 611. That is, a motion for summary judgment shall be granted if, after an opportunity for discovery, the motion, memorandum, and supporting documents show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and, as previously explained herein, shall consider any documents to which no objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum, and the court shall consider all objections prior to rendering judgment and specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider. La. C.C.P. art. 966(D)(2).

The burden of proof on a motion for summary judgment rests with the mover. La. C.C.P. art. 966(D)(1). If the mover will bear the burden of proof at trial on the issue before the court in the motion, the burden of showing there is no genuine issue

---

[5] The trial court judgment did not mention the motion for summary judgment on the cross-claims against Warren and Johnny, and also noted that Plaintiffs' peremptory exception raising the objection of no cause of action, which was heard the same day as the motion for summary judgment, is moot. Silence in a judgment as to any issue before the trial court is deemed a rejection of that demand or issue. *Naramore v. Aikman*, 2017-1621 (La.App. 1 Cir. 6/4/18), 252 So.3d 935, 944. The motion for summary judgment on the cross-claims against Warren and Johnny is thus deemed denied. These issues are not before us on appeal.

6

of material fact remains with the mover. After the mover makes a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating a material factual issue remains. However, if the mover will not bear the burden of proof at trial, the mover need not negate all essential elements of the adverse party's claim, but must point out the absence of factual support for one or more elements essential to the claim. Thereafter, the burden shifts to the non-moving party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *See* La. C.C.P. art. 966(D)(1); *Red Star Consultants*, 2017-0847 at p. 4, 242 So.3d at 611. Because the applicable substantive law determines materiality, whether a particular fact in dispute is material must be viewed in light of the substantive law applicable to the case. *Bryant v. Premium Food Concepts, Inc.*, 2016-0770, p. 3 (La.App. 1 Cir. 4/26/17), 220 So.3d 79, 82, *writ denied*, 2017-0873 (La. 9/29/17), 227 So.3d 288.

The Louisiana Mineral Code provides that a co-owner of land, acting alone, may grant a valid mineral lease as to his undivided interest in the land. La. R.S. 31:166. However, this provision expressly requires the lessee to make every effort to contact the co-owners of the land and, if contacted, offer to contract with them on substantially the same basis that the lessee has contracted with the other co-owner. *Id.* Further, §166 requires the lessee to obtain the consent of co-owners owning at least an undivided eighty percent interest in the land prior to exercising its rights under the lease. *Id.* Thus, although the mineral lease granted by a co-owner of land is valid, the exercise of this validly-granted right is suspended until the requisite consent is obtained.

In the Agreement at issue in this case, Warren and Johnny did not simply grant Southern Aggregates a mineral lease as to their own undivided interests in the land, as they were authorized to do under §166. If Warren and Johnny had contracted on

7

their own behalf as to only their own undivided interest in the land, the lease would have been valid, but Southern Aggregates would have been required to make every effort to contact the other co-owners and to obtain consent from co-owners representing at least eighty percent undivided ownership interest in the land prior to exercising any rights granted in the lease.

However, the Agreement at issue in this case was purportedly between Southern Aggregates and all co-owners of the property (referred to in the Agreement as "the Heirs of Wm. Johnson, Deceased"), through Warren and Johnny, acting as their authorized representatives. In negotiating and executing the Agreement, Warren and Johnny represented to Black that they were acting as the authorized representatives of all of the co-owners of the land, and the Agreement as executed contemplates a lease of all of the ownership interest in the land.

A person may represent another person in legal relations as provided by law or by juridical act. La. C.C. art. 2985. An agent is one who acts for or in place of another (the principal) by authority from the latter. An agency relationship may be created by express appointment of a mandatary under Article 2985 or by implied appointment arising from apparent authority. *Duplessis Cadillac, Inc. v. Creative Credit Services, Inc.*, 564 So.2d 336, 338-39 (La.App. 1 Cir. 1990). Therefore, an agent's authority is composed of his actual authority, express or implied, together with the apparent authority which the principal has vested in him by his conduct. *Duplessis Cadillac*, 564 So.2d at 339. As between principal and agent, the limit of an agent's authority to bind the principal is governed by the agent's actual authority; however, as between principals and third parties, the limit of an agent's authority to bind the principal is governed by the agent's apparent authority. *Barrilleaux v. Franklin Foundation Hospital*, 96-0343, p. 6 (La. App. 1 Cir. 11/8/96), 683 So.2d 348, 353-54, *writ denied*, 96-2885 (La. 1/24/97), 686 So.2d 864.

8

Implied or apparent agency exists if the principal has the right to control the conduct of the agent and the agent has the authority to bind the principal. *Barrilleaux*, 96-0343 at p. 6, 683 So.2d at 354. Apparent agency arises when the principal has acted so as to give an innocent third party a reasonable belief that the agent had the authority to act for the principal, and the third party reasonably relies on the manifested authority of the agent. *Duplessis*, 564 So.2d at 339. Apparent agency is established by the words and conduct of the parties and the circumstances of the case. An agency relationship may be created even though there is no intent to do so. *Terito v. Wall-Vaughn Motors, Inc.*, 2007-0627, p. 3 (La.App. 1 Cir. 12/21/07), 978 So.2d 403, 405.

An agency relationship is never presumed; it must be clearly established. The burden of proving apparent authority is on the party seeking to bind the principal. A third party may not blindly rely on the assertions of an agent, but has an affirmative duty to determine, at his peril, whether the agency purportedly granted by the principal permits the proposed act by the agent. One must look from the viewpoint of the third party to determine whether an apparent agency has been created. *Terito*, 2007-0627 at p. 3, 978 So.2d at 405, quoting *Barrilleaux*, 96-0343 at pp. 6-7, 683 So.2d at 354.

In the instant case, Southern Aggregates and Black assert that they reasonably relied on Warren and Johnny's assertions, as well as those of Warren and Johnny's attorney, that Warren and Johnny had authority to act on behalf of all of the co-owners of the land in granting the mineral lease. The Agreement contains the following statement regarding Warren and Johnny's authority to act on behalf of the co-owners:

> The Representatives represent and warrant, jointly and severally, that they (1) have the power and authority to execute this Agreement, (2) have the consent of all of the heirs of Lessor to enter into this Agreement and lease the Property to Lessee, (3) will notify all heirs of Lessor about the terms of this Agreement, and (4) will provide written

9

verification of his [sic] authority to act on behalf of Lessor if requested by Lessee.

However, as set forth above, Southern Aggregates and Black could not blindly rely on these assertions of authority by alleged agents, but rather had an affirmative duty to determine whether Warren and Johnny were authorized by the co-owners to act on their behalf, and to what extent. Apparent authority could only arise from the actions of the principals (the co-owners), not from the assertions of the alleged agents (Warren and Johnny), and Southern Aggregates and Black offered no evidence to suggest that the co-owners acted in such a way as to create apparent authority in Warren and Johnny.

Even assuming that the Agreement was valid insofar as it concerned Warren and Johnny's undivided interests in the property, the Mineral Code provides that the mineral rights conferred in the Agreement may not be exercised unless and until the lessees comply with the provisions of § 166 regarding contacting the other co-owners and obtaining consent from at least eighty percent of the ownership interest. La. R.S. 31:166. Considering the evidence before the court on the motion for summary judgment, specifically the emails in which counsel for Warren and Johnny informed Black that Warren and Johnny did not have a written mandate to act on behalf of the other co-owners and did not know exactly how many co-owners existed at the present time, it is clear that a genuine issue of material fact exists as to whether Southern Aggregates and Black satisfied the requirements of § 166 prior to exercising its rights under the Agreement. Because a genuine issue of material fact remains as to Plaintiffs' claims, summary judgment was not appropriate in this case.

## CONCLUSION

For the reasons set forth herein, the partial summary judgment dismissing all of Plaintiffs' claims against defendants, Southern Aggregates, LLC and Kevin P.

10

Black, is reversed. Costs of this appeal are to be borne by defendants, Southern

Aggregates, LLC and Kevin P. Black.

**REVERSED.**